**Jean Ann CONE, as Personal Representative of the Estate of Evelyn M. Glaeser, deceased, and as representative of a class of all persons similarly situated, Plaintiff,**

v.

**THE FLORIDA BAR, The Florida Bar Foundation, Inc., and Holland & Knight, on behalf of itself and as a representative of a class of all persons similarly situated, Defendants.**

No. 84–1345–Civ.T–13.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 18, 1985.

Herbert P. Schlanger, Atlanta, Ga., for plaintiff.

Michael Nachwalter, Brian F. Spector, William J. Blechman, Kenny Nachwalter & Seymour, P.A., Miami, Fla., Rayford H. Taylor, Tallahassee, Fla., for defendant The Florida Bar.

Thomas C. MacDonald, Jr., Craig B. Glidden, Lynn Welter, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Fla., for defendant The Florida Bar Foundation, Inc.

F. Wallace Pope, Jr., Johnson, Blakely, Pope, Bokor & Ruppel, P.A., Clearwater, Fla., for defendant Holland & Knight.

Arthur J. England, Jr., Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., L. David Shear, Shear, Newman & Hahn, P.A., Tampa, Fla., Peter M. Siegel, Randall C. Berg, Jr., IOLTA, Miami, Fla., for amici curiae.

## MEMORANDUM OPINION

LYNNE, District Judge, Sitting by Designation.

### I.

This action comes before the Court on cross motions for partial summary judgment. In her claim against The Florida Bar, Florida Bar Foundation, Inc., and the Holland & Knight law firm, the plaintiff challenges the constitutionality of Florida's Interest on Trust Accounts (IOTA) program, through which certain funds held in lawyers' trust accounts are placed in interest bearing accounts to produce income for legal aid programs and other public purposes.[1] The plaintiff alleges that this appropriation of interest earned on her money constitutes an uncompensated taking of private property in violation of the fifth amendment.[2]

■ The plaintiff's constitutional claim stands or falls on one threshold question: Is interest earned on nominal or short-term funds held in an IOTA account the property of the client for purposes of the fifth amendment? If so, then that property interest may not be appropriated by Florida's IOTA program without just compensation. Having considered the motions and the submissions of counsel and *amici curiae*, the Court finds as a matter of law that, by pooling funds otherwise unproductive and inappropriate for investment, Florida's IOTA program interferes with no property interest protected under the taking clause of the fifth amendment.

### II.

The facts underlying this dispute are stipulated for purposes of the motions for partial summary judgment.[3] In February, 1969, Evelyn M. Glaeser retained the Holland & Knight law firm to probate the estate of her deceased husband. Mrs. Glaeser paid a cost deposit of $100.00 to Holland & Knight, which was placed in a non-interest bearing trust account. When

---

1. For a more detailed description of the background and operation of the IOTA program, *see In re Interest on Trust Accounts*, 402 So.2d 389 (Fla.1981), and Note, *Interest on Lawyers' Trust Accounts—Legal Issues and the Kansas Program*, 33 Kan.L.Rev. 145, 145–52 (1984).

2. The plaintiff also alleges that the IOTA program constitutes a denial of procedural due process, conversion of property, and breach of fiduciary duty. By order of this Court on March 5, 1985, the constitutional issues were submitted on stipulated facts. No other pending motions or issues are addressed in this opinion.

3. Therefore, this case may properly be resolved by way of summary judgment under Fed.R. Civ.P. 56(c). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

the firm's representation of Mrs. Glaeser was concluded in 1970, $13.75 of the original cost deposit remained in the trust account. Through inadvertence, this amount was not refunded to Mrs. Glaeser but remained in the firm's non-interest bearing account until December 1, 1981.

During the period in which Mrs. Glaeser's money was held by Holland & Knight, the Supreme Court of Florida approved and implemented a plan to earn interest on the tremendous sums of money lying dormant in trust accounts across the state. Following the example of several other English-speaking jurisdictions, the supreme court promulgated a plan for lawyers and law firms to place nominal or short-term trust funds into interest bearing accounts, the proceeds of which would be allotted to legal aid organizations, law student scholarships, and other appropriate measures to benefit the public. After a seven-year period of investigation, study, and modification, the supreme court adopted in final form the Interest on Trust Accounts (IOTA) program on July 16, 1981.[4] Financial institutions paid accumulated interest to the Florida Bar Foundation, Inc., a non-profit charitable corporation authorized by the supreme court in 1978 to receive funds generated by IOTA accounts and to oversee the allotment and distribution of these funds in accordance with IOTA's stated goals.

On December 1, 1981, Holland & Knight transferred all of the firm's nominal or short-term trust account funds, including Mrs. Glaeser's $13.75, to an interest bearing IOTA account, where it remained for almost three years. After discovering its error, Holland & Knight returned the principal amount to Mrs. Glaeser by check dated September 26, 1984.

### III.

The plaintiff's constitutional challenge of Florida's IOTA program is based upon her contention that any interest earned on her money while entrusted to Holland & Knight must belong to her. The plaintiff contends that any appropriation of this interest by the state—no matter how small the amount or justifiable the reason—is an uncompensated taking in violation of the fifth amendment.

■ It is axiomatic that the fifth amendment prohibits government from taking citizens' private property without just compensation. *See* U.S. Const. amend V. It is equally well-settled that this proscription applies to the states through the fourteenth amendment. *E.g., Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). The fifth amendment, however, safeguards only those private interests that fall within a specialized definition of "property" for purposes of constitutional protection. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than an unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[5] *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although the federal constitution guarantees the protection of private property from uncompensated governmental interference, it does not undertake to define a

---

4. The Florida IOTA plan was amended in 1979 to drop three objectives for fear that these proposed uses were not sufficiently charitable for IRS approval. *See In re Interest on Trust Accounts,* 372 So.2d 67, 69 (Fla.1979). The program was further amended to remove all client control over the determination whether to participate in IOTA in order to avoid possible assignment-of-income issues and resultant income tax liability. *See In re Interest on Trust Accounts,* 402 So.2d 389, 391 (Fla.1981).

5. Although *Roth* involved an alleged deprivation of property without procedural due process, its definition of a protectable property interest is equally applicable in the context of a taking clause claim. *See Texaco, Inc. v. Short,* 454 U.S. 516, 525, 102 S.Ct. 781, 790, 70 L.Ed.2d 738 (1982) (applying *Roth* test to claims under procedural due process and taking clauses).

protectable and legitimate claim of entitlement. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Such claims are created and their dimensions are defined by existing independent sources such as positive rules of substantive law or mutually explicit understandings. *Id.; Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). When applied to the IOTA program, neither of these sources confers upon the plaintiff a legitimate claim of entitlement to any interest generated by her $13.75.

### A. Substantive Law

As the foundation for her theory that she owns any interest earned on her portion of the Holland & Knight IOTA account, the plaintiff relies upon the traditional property doctrine that interest follows principal. The attempt to extend this principle to the present facts ignores the realities of the IOTA program and is not persuasive.

First, federal banking laws negate any contention that the plaintiff has a substantive legal right to expect interest on nominal funds on deposit with Holland & Knight. Lawyers and law firms must use available-on-demand accounts to facilitate the frequent transactions attendant to trust accounts for nominal or short-term client funds. Federal law historically has forbidden financial institutions from paying interest on such accounts and only recently has been amended to allow interest-bearing demand accounts, commonly known as Negotiable Order of Withdrawal (NOW) accounts. *Compare* Banking Act of 1933, ch. 89, 11(b), Pub.L. No. 66, 48 Stat. 181 (1933) (forbidding payment of interest on demand accounts), *with* Consumer Checking Account Equity Act, 12 U.S.C. § 1832(a)(1)

(1982) (allowing interest for certain NOW account depositors). Presently, NOW accounts are restricted by statute to accounts consisting only of funds owned by individuals, charitable non-profit organizations, or public entities. *See* 12 U.S.C. § 1832(a)(2) (1982); 12 C.F.R. §§ 217.157, 329.103, 526.-1(1) (1985) (discussing eligible depositors for NOW accounts). These ownership restrictions prevent a law firm from maintaining a pooled NOW account for private investment of client funds. *See id.* The capacity to earn interest on nominal or short-term funds held by lawyers and law firms is created and remains viable only through IOTA, which channels the interest to the Florida Bar Foundation, Inc., an appropriate NOW account beneficiary. *See Carroll v. State Bar of California,* 166 Cal.App.3d 1193, 213 Cal.Rptr. 305 (upholding constitutionality of California's mandatory IOTA program), *cert. denied sub nom Chapman v. State Bar of California,* —— U.S. ——, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985).[6]

In her contention that she has a substantive right to IOTA proceeds, the plaintiff relies most strongly upon a somewhat similar fact situation in *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). In the *Webb's* case, the Supreme Court held that a Florida statute allowing a county to retain more than $90,000 interest earned on interpleader funds deposited with the court effected an uncompensated taking in violation of the fifth amendment. The facts in the *Webb's* case, however, are clearly distinguishable from the IOTA program and the plaintiff's claim. First, the Supreme Court invalidated the Florida statute in large part because the state had authority

---

**6.** The *Carroll* case is the only adversarial proceeding to address the constitutionality of a state IOTA program. Eight other state supreme courts, in adopting IOTA programs, have determined that IOTA does not violate a constitutionally-protected property right. *See Matter of Interest on Lawyers' Trust Accounts,* 283 Ark. 252, 675 S.W.2d 355 (1984); *In re Interest on Trust Accounts,* 402 So.2d 389, 395 (Fla.1981); *In re Petition of Iowa State Bar Ass'n,* No. 84–1641, slip op. at 2 (Iowa 1984), *cert. denied sub nom Ronwin v. Supreme Court of Iowa,* —— U.S. ——, 105 S.Ct. 2325, 85 L.Ed.2d 843 (1985); *In re Massachusetts Bar Ass'n,* 395 Mass. 1, 478 N.E.2d 715 (1985); *Petition of Minn. State Bar Ass'n,* 332 N.W.2d 151, 158 (Minn.1982); *Petition of New Hampshire Bar Ass'n,* 122 N.H. 971, 453 A.2d 1258 (1982); *In re Interest on Lawyers' Trust Accounts,* 672 P.2d 406, 407–08 (Utah 1983); *In re Adoption of Amendments to CPR DR9–102, IOLTA,* 102 Wash.2d 1101 (1984).

pursuant to another statute to assess a statutory service charge for interpleader deposits, so that the challenged statute in fact allowed the state to "exact two tolls" upon the interpleader funds. 449 U.S. at 159, 101 S.Ct. at 450. The Court expressly limited its finding of an unconstitutional taking of interest to the narrow circumstances where a separate statute authorized a clerk's fee, *id.* at 164, 101 S.Ct. at 452, which sharply diminishes *Webb's* relevancy to the instant case.

The *Webb's* decision is further distinguishable in that the interest earned on the interpleader funds gave rise to a legitimate claim of interest. The funds were sufficient in amount and were to be held for a sufficient period of time to generate actual income.[7] In contrast, no such claim of entitlement exists for the plaintiff's nominal funds, which could garner no net income. In a pivotal passage from the *Webb's* decision, the Court held that the challenged statute had "the practical effect of appropriating for the county the *value of the use of the fund* for the period for which it [was] held in the registry." *Id.* (emphasis supplied). This language lends further support for the finding that Mrs. Glaeser had no substantive property right: when the use of specific funds has *no net value*, there can be no property interest for the state to appropriate.[8]

The plaintiff's argument that interest always follows principal is therefore inapposite in the context of the IOTA program. When Justice Johnson observed in *Himely*

v. Rose, 9 U.S. (5 Cranch) 313, 319, 3 L.Ed. 111 (1809), that "interest goes with the principal, as the fruit with the tree," his illustration necessarily assumed the existence of a fruit-bearing tree. Mrs. Glaeser had no legitimate expectancy that she would receive income from her $13.75. She may not use the fifth amendment to create a pecuniary windfall where none previously existed. *See, e.g., United States v. Willow River Power Co.*, 324 U.S. 499, 502, 65 S.Ct. 761, 89 L.Ed. 1101 (1945) (purpose of taking clause is to protect against certain economic losses).

## B. Mutually Explicit Understandings

Federal banking regulations impose certain ownership restrictions that effectively negate any mutual understanding between lawyers and clients that nominal or short-term funds will be pooled and invested to generate interest. See discussion, *supra* at page 135. Individual NOW accounts for such funds, although viable under relevant banking law, nevertheless could not produce net income for clients because of service charges and limitations imposed by the financial institution. Monthly service charges, minimum balance requirements, and per-check charges on all but the larger NOW accounts render these investment vehicles worthless for client funds appropriate for IOTA investment.[9] Nor would individual investment of nominal or short-term funds be practical in light of transaction costs associated with the administration of

---

7. The interpleader fund consisted of $1,800,000 and was held in the registry of the court for approximately one year. *See Webb's*, 449 U.S. at 161–62, 101 S.Ct. at 450–51. The crucial distinction is not the amount of interest earned, but that the circumstances led to a legitimate expectation of interest exclusive of administration costs and expenses.

   It is also interesting to note that the interest earned on the *Webb's* fund accrued to the benefit of the eventual recipients of the fund rather than the depositor. The defendants raise the point that many trust account funds eventually are distributed to parties other than the client who, therefore, should likewise receive any interest accrued.

8. The *Webb's* case was also rejected as controlling in *Carroll*, which stated that "*Webb's* does

not address issues pertinent to this case." 209 Cal.Rptr. at 748. The Florida Supreme Court also distinguished IOTA from the *Webb's* facts, stating that "no client is compelled to part with 'property', since the program creates income where there has been none before, and the income thus created would never benefit the client under any set of circumstances. 402 So.2d at 395.

9. The minimum deposit requirement alone would have thwarted Mrs. Glaeser's chance to earn interest. NCNB National Bank of Florida, where Holland & Knight maintains its IOTA account, has always required a minimum balance of at least $100.00.

such an account. *See* A.B.A. Task Force and Advisory Board on Interest on Lawyer Trust Accounts, *Report to the Board of Governors*, 22–24 (July 1982) (describing transaction costs in administering NOW account); A.B.A. Formal Opinion 348, 68 A.B.A. J. 1502, 1503 (1982) (requiring lawyers to invest client funds only when clear economic justification for time and effort involved). The end result of these economic and practical impediments to individual investment of IOTA funds is to negate any reasonable unilateral expectation, much less a mutually explicit understanding, that a client such as Mrs. Glaeser should receive interest generated by the IOTA program.

Based on the foregoing analysis, the Court finds that the Florida IOTA program encroaches upon no constitutionally protected property interest.[10]

## IV.

There is an additional independent reason for the Court's granting the defendants' motion for partial summary judgment. Even assuming there is a protectable "property" interest, Florida's IOTA program does not constitute an unlawful "taking." This case does not involve a physical invasion but, at most, the regulation of the use of property to serve a vital public interest.[11] As such, the "bundle" and "strand" analysis articulated in *Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), is persuasive.

Under the *Allard* analysis, the bundle of property rights of clients with nominal or short-term trust deposits is substantially intact: the IOTA program does not interfere with the client's ability to withdraw the nominal or short-term deposit and do with it as he wishes. At most, IOTA affects merely one strand of property rights by putting otherwise dormant, non-produc-

tive nominal or short-term client trust deposits to work to improve the legal system.

## V.

For the reasons set forth above, this Court finds that the IOTA program is facially constitutional and that it does not constitute an unconstitutional taking under the Fifth Amendment. Therefore, an order will be entered denying plaintiff's motion for partial summary judgment and granting that of defendants. Because the resolution of these constitutional issues is tantamount to a final judgment in favor of defendants, such order will dismiss the constitutional claims with prejudice and decline to exercise pendant jurisdiction of plaintiff's state law claims.

DONE this 16th day of December, 1985.*

---

10. Because the property interests protected by the procedural due process and taking clauses are identical, *see supra* note 5, this determination also disposes of the plaintiff's procedural due process claim.

11. The Florida Supreme Court has clearly determined that the IOTA program serves a vital public interest, *see In re Interest on Trust Ac-*

*counts,* 402 So.2d at 396, and the plaintiff has readily acknowledged the public purposes served by Florida's IOTA program.

* This opinion is the product of exhaustive research and careful analysis by Luther M. Dorr, Jr., Law Clerk.