[No. F047092. Fifth Dist. Nov. 22, 2005.]

Conservatorship of the Person and Estate of EDITH KEY.
RON DICKEN, as Conservator, etc., Petitioner and Respondent, v.
FERN McDONALD, Objector and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exceptions of parts 2 through 6.

---

**COUNSEL**

Neil A. Helding for Objector and Appellant.

Peter D. Moock, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Petitioner and Respondent.

---

**OPINION**

**LEVY, Acting P. J.**—This appeal arises from the order approving the final account and report of the Kings County Public Guardian (Public Guardian) with respect to the conservatorship of Edith Key. Appellant, the executor of the conservatee's estate, objects to the manner in which the Public Guardian allocates interest earned on the pooled conservatorship estates to each individual estate. However, appellant's challenge does not focus on the subject final account. Rather, appellant's primary goals are to have the relevant code section, Probate Code section 7642, declared unconstitutional and to have a referee appointed to examine all conservatorships that have been handled by the Public Guardian during the last 13 years. Further, appellant's attorney, Neil A. Helding, wants to be declared an "interested person" with respect to those other conservatorships and seeks attorney fees under Code of Civil Procedure section 1021.5.

As discussed in the published portion of this opinion, Probate Code section 7642 violates neither the takings clause of the Fifth Amendment nor due process. In the nonpublished portion, we hold that the issues raised concerning other conservatorships are outside the scope of this appeal. Moreover, with respect to Helding, he does not qualify as an "interested person" and he did not file the required postjudgment motion for attorney fees. Accordingly, the order will be affirmed.

## BACKGROUND

In May 2002, the Public Guardian was appointed the conservator of the person and estate of Edith Key. Although Helding was present at the hearing on the conservatorship petition as an "interested party," the court appointed Jennifer Giuliani as Key's attorney.

The Public Guardian filed a current account covering the first year of the conservatorship in May 2003. In April 2003, Key inherited approximately $224,000. Before that time, she was dependent on Social Security for her support.

Key died in November 2003.

In March 2004, the Public Guardian filed a final accounting and report for the Key conservatorship. Shortly thereafter, Helding, as appellant's attorney and as an "interested person," filed the first of several sets of objections to the final accounting. In response to Helding's concerns, the Public Guardian revealed that Key's estate was located in the Public Guardian's trust account, a pooled account, at the Bank of Sierra. The Public Guardian also explained that he calculates the interest to be applied to each estate by averaging the interest rates from three financial institutions at the end of each quarter.

Helding objected to the Public Guardian's practice of interest averaging. According to Helding, the Public Guardian was obligated to apply the highest rate available.

Following a review of the applicable law, the Public Guardian filed a supplemental response to Helding's objections. The Public Guardian concluded that the interest averaging practice was not appropriate under Probate Code section 7642. Therefore, the Public Guardian revised the final accounting for the Key estate. The Public Guardian calculated interest by using the highest amount that Key could have earned at the Bank of Sierra if her estate had been separately invested. The Public Guardian also informed the court that all conservatorship estates would be credited with the highest interest rate that each would have earned if separately invested in the financial institution.

On July 1, 2004, through a stipulation entered into by the Public Guardian and Helding, the court ordered the Public Guardian to distribute the conservatorship estate to appellant less approximately $5,000 for fees that had been

requested by the Public Guardian and counsel. This retained sum was to be held by the Public Guardian pending further agreement or court order. The stipulation did not settle, allow or approve the final account.

Thereafter, the Public Guardian filed an amended final account. Helding again filed objections. Among other things, Helding argued that he should be allowed to act as an interested person on behalf of other conservatorships, that he was entitled to attorney fees under Code of Civil Procedure section 1021.5, that the Public Guardian should be surcharged, and that Probate Code section 7642 is unconstitutional.

Following a hearing, the trial court approved the final account. The court ruled that Probate Code section 7642 was not unconstitutional and that the phrase "highest rate of interest," as used in that section, referred to the highest rate in the institution where the funds are actually invested. The court further concluded that, although the Public Guardian made an error in interest calculations, that error was made in good faith and thus the Public Guardian should not be surcharged. The court expressed no opinion on Helding's request for attorney fees since a motion had not been brought. Additionally, the court denied Helding's requests to appoint a referee to pursue a general investigation of the Public Guardian and to be found an "interested person" in other estates.

## DISCUSSION

1. *Probate Code section 7642 violates neither the takings clause of the Fifth Amendment nor due process.*

Probate Code section 7642 provides:

"(a) The public administrator shall credit each estate with the highest rate of interest or dividends that the estate would have received if the funds available for deposit had been individually and separately deposited.

"(b) Interest or dividends credited to the account of the public administrator in excess of the amount credited to the estates pursuant to subdivision (a) shall be deposited in the county general fund."

Appellant contends that subdivision (b) violates substantive and procedural due process because it results in a "confiscation" of property without notice or an opportunity to be heard.

Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " (*Collins v. Harker Heights* (1992) 503 U.S. 115, 125 [117 L.Ed.2d 261, 112 S.Ct. 1061].) The law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained. (*Salmon Trollers Marketing Assn. v. Fullerton* (1981) 124 Cal.App.3d 291, 304 [177 Cal.Rptr. 362].) In other words, " '[s]o-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," [citation], or interferes with rights "implicit in the concept of ordered liberty," [citation].' " (*Cook v. City of Buena Park* (2005) 126 Cal.App.4th 1, 5 [23 Cal.Rptr.3d 700].)

However, when analogous statutes relating to interest income generated by lawyer trust accounts have been challenged, courts have determined constitutionality based on the takings clause of the Fifth Amendment. (Cf. *Phillips v. Washington Legal Foundation* (1998) 524 U.S. 156 [141 L.Ed.2d 174, 118 S.Ct. 1925]; *Carroll v. State Bar* (1985) 166 Cal.App.3d 1193 [213 Cal.Rptr. 305].) This analysis is consistent with the court's reluctance to expand the substantive due process concept. (*Collins v. Harker Heights, supra*, 503 U.S. at p. 125.) As the court noted in *Collins v. Harker Heights*, guideposts for responsible decisionmaking in the uncharted area of substantive due process are scarce and open-ended. (503 U.S. at p. 125.) Similarly here, the determinative issue is whether the "excess" interest is private property subject to Fifth Amendment protection, not whether the statute is unreasonable, arbitrary or capricious.

█ "The Fifth Amendment provides that private property shall not be taken for public use without just compensation." (*United States v. Reynolds* (1970) 397 U.S. 14, 15–16 [25 L.Ed.2d 12, 90 S.Ct. 803].) "Just compensation" means the full monetary equivalent of the taken property. (*Id.* at p. 16.)

█ Interest income is the " 'private property' of the owner of the principal." (*Phillips v. Washington Legal Foundation, supra*, 524 U.S. at p. 172.) However, the Fifth Amendment is satisfied so long as the owner is paid for what is taken, i.e., put in the same position monetarily as he or she would have occupied if the property had not been taken. (*United States v. Reynolds, supra*, 397 U.S. at p. 16.) "That the 'taker' may reap a profit above and beyond the value of the property interest taken does not entitle the person from whom the property is taken to share in those profits." (*Carroll v. State Bar, supra*, 166 Cal.App.3d at p. 1204.) Any such additional value does not represent an actual loss and therefore payment for it is not justified. It is a

"loss" suffered by no one in fact. (*United States v. Chandler-Dunbar Co.* (1913) 229 U.S. 53, 76 [57 L.Ed. 1063, 33 S.Ct. 667].) In other words, the award cannot be enhanced by any gain to the taker. (*Carroll v. State Bar, supra,* 166 Cal.App.3d at pp. 1204–1205.)

■ Within this framework, it must be concluded that Probate Code section 7642 does not involve a taking of property prohibited by the Fifth Amendment. That section requires that each estate be credited with an amount representing the highest rate of interest the estate would have earned if the funds had been individually and separately invested. Thus, each estate receives what it would have received had the funds not been invested in a pooled trust account. Accordingly, the estates are in the same position they would have been in monetarily if the Public Guardian were not administering them. No estate is stripped of its individual earnings potential. Thus, the estates suffer no "loss" when the "excess interest," if any, is deposited in the county general fund.

■ Procedural due process principles require reasonable notice and an opportunity to be heard before governmental deprivation of a significant property interest. (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 569 [6 Cal.Rptr.3d 746].) However, a "significant property interest" requires more than a unilateral expectation. The person claiming a property interest subject to constitutional protection must have a legitimate claim of entitlement to it. (*Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768, 775 [206 Cal.Rptr. 910].)

■ As noted above, the conservatorship estates have no property interest in the "excess interest" either under the takings clause of the Fifth Amendment or by statute. Pursuant to Probate Code section 7642, those estates are in the same position they would be if the Public Guardian were individually investing each estate's assets. Accordingly, due process does not require that the estates receive notice and an opportunity to be heard before the interest earned on the pooled trust account is allocated.

2.–6.\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 254.

## DISPOSITION

The order is affirmed. Costs on appeal are awarded to respondent.

Cornell, J., and Dawson, J., concurred.