In Re: The Matter of Interest on Lawyers' Trust Accounts

82-276                                    648 S.W.2d 480

Supreme Court of Arkansas
Opinion delivered April 11, 1983

PER CURIAM. The Arkansas Bar Association, through its Interest on Lawyers' Trust Accounts Committee, petitioned this court to permit the collection and disbursement of interest derived from lawyers' trust accounts, which are nominal in amount and of short duration. The recipient of the funds would be a nonprofit organization to be created to dispense the funds primarily to provide legal aid to the poor in civil matters, and secondarily, for other specified legal projects. On January 10, 1982, in response to the petition we issued a *per curiam* opinion inviting *amicus curiae* and other writing on this proposal. The principal responses have been from the Bar Committee that originally petitioned this court, the Arkansas Justice Foundation, Inc., a nonprofit, tax exempt entity which assists and supports free legal services for the poor, and some legal aid offices.

According to the briefs from the Bar Association and the Justice Foundation, the pilot program of the nature proposed here is, in essence, the Florida program. In seven states the highest court or the legislature has authorized a similar plan. Proposals have been disapproved in three states. Similar proposals are under study in the vast majority of the

other states. The Florida program was first proposed there in 1971 and authorized in 1978 by the Supreme Court of Florida in *In Re: Interest on Trust Accounts,* 356 So.2d 799 (Fla. 1978). Alterations were found to be necessary which were made in the following opinions: *Matter of Interest on Trust Accounts,* 372 So.2d 67 (Fla. 1979); *Matter of Interest on Trust Accounts,* 396 So.2d 719 (Fla. 1981); and *Matter of Interest on Trust Accounts,* 402 So.2d 389 (Fla. 1981). See also *In the Matter of the Petition of the Minnesota Bar Association, No. A-8* (Minn., December 8, 1982); and *Petition of New Hampshire Bar Association* (New Hamp., November 24, 1982).

The Florida program, like the present proposal, is voluntary in the sense that attorneys are free to participate or refuse to participate as they see fit. This is acceptable. However, that court's most recent pronouncement, which gives us great concern, amended the rules to provide that clients need not be notified that their funds are being so used nor can they decline to allow their escrow funds to be used in the program. This change was deemed necessary because the Internal Revenue Service ruled that the interest generated from the trust accounts would be taxable to the clients whose funds were used unless the decision whether to participate in the program was removed from the clients. Rev. Rul. 81-209, 26 CFR 1.61-7, provides that interest earned in a plan where the client has no control over the decision to participate would be treated as reportable income only by the receiving entity, not the attorney nor his clients, so long as the funds to be commingled were nominal in amount and held for a short duration. The Florida program and the plan submitted to this court by the petitioner committee provide that once the attorney decides to participate consent by his clients is not required. This eliminates any control the client may have had over the earnings. The petitioner justifies this procedure, as did the Florida court, by the argument that the clients do not currently receive any income from this type of account, so that there is no "taking" of "property" that would trigger the protection of the due process clause of the Constitution; and that for a single client's funds, nominal in amount, placed in the lawyer's trust account for a short duration, it is impractical to compute and pay interest to

that individual client. In summary, the proposal involves only funds and accounts that presently do not earn interest, and, therefore, the clients lose nothing by the implementation of this program.

While we support the basic concept of allowing this type of trust funds to be placed in interest bearing accounts, we are of the opinion that participation in the program must be conditioned upon notice to and approval from the clients whose funds are so used. The public confidence in their attorneys and the legal profession in general is not likely to be enhanced by the knowledge that lawyers are authorized to use their clients' funds to generate income in support of projects that the clients may disapprove and certainly cannot control. As American Bar Association President Morris Harrell recently stated in a speech in Seattle, "Our legal system rests so precariously on public confidence that the rule of law itself is threatened by a lack of real understanding by the public." With respect to the use of client funds to generate income for a worthy legal project, such as here, we think these considerations require that the proponents seek a change in the Internal Revenue Code or the interpretation to enable the plan to be administered in a manner that unquestionably promotes rather than potentially undermines public confidence in the legal profession. Full disclosure of every use of client funds is essential to that much needed confidence. Further, the fact that a person is not currently using his resource to generate income does not give license to others to use that resource to generate income for a purpose, no matter how worthy, without the owner's consent.

We reiterate that we support the concept of allowing lawyers' trust funds to be placed in interest bearing accounts to generate income for legal services to the poor and the other purposes proposed in the submitted plan. The Arkansas Justice Foundation, Inc., the Arkansas Bar Association and other proponents are to be commended. Efforts should be made to bring about a change in the federal tax laws or their interpretation in order to permit us to authorize a plan that avoids the difficulties about which we have expressed our concern.

Petition denied.

Hays, J., would grant.

Steele Hays, Justice, dissenting. I would grant the petition. It has obvious advantages: it is for the public good; it produces earnings from a source that has heretofore produced nothing; it has the support of the bar and several bar related organizations; it has the opposition of no one.

The argument that the client must approve the plan is not without substance, but the objection is more theoretical than real, and I expect it would resolve itself in practice. Clients traditionally have neither received nor expected interest earnings on these short-term funds, which are in relatively small amounts or, if not, are rarely held for more than a few days. Nor has this problem prevented several other states from adopting similar plans.

If, as the majority suggests, the legal profession and its systems are losing the public's confidence, I think it is not so much the result of our willingness to venture new methods, as an unwillingness to try them.