In the Matter of INTEREST ON LAWYERS' TRUST ACCOUNTS.

No. 19266.

Supreme Court of Utah.

Oct. 25, 1983.

C. Jeffrey Paoletti, Salt Lake City, for Utah State Bar Ass'n.

PER CURIAM:

This petition invokes the Court's constitutional original jurisdiction to regulate the legal profession. *See generally In re Utah State Bar Petition, Etc.,* Utah, 647 P.2d 991 (1982).

The Utah Bar Foundation and the Board of Commissioners of the Utah State Bar seek approval to implement a program under which interest accrued on certain lawyers' accounts held in trust for clients would be paid to the Foundation, a nonprofit corporation, to support law-related charitable objects such as legal aid for the disadvantaged, law reform, and the administration of justice. Interest on lawyers' trust accounts (I.O.L.T.A.) programs have now been adopted in about fifteen states and in Canada and Australia. The concept has been endorsed by the Conference of Chief Justices, by the Board of Governors of the American Bar Association, and by other interested organizations.

Published opinions describing the history and affirming the legality, tax clearance, and ethical acceptability of I.O.L. T.A. programs include: *Matter of Interest on Trust Accounts,* Fla., 402 So.2d 389 (1981); *Petition of Minnesota State Bar Association,* Minn., 332 N.W.2d 151 (1982); *Petition of New Hampshire Bar Association,* 122 N.H. 971, 453 A.2d 1258 (1982); Rev.Rul. 81–209, 1981–2 C.B. 16 (interest earned on I.O.L.T.A. account and paid to Bar Foundation not taxable to client); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 348, 68 *A.B.A.J.* 1502 (1982) (ethical for lawyers to partici-

pate in I.O.L.T.A. program). On the authority of these precedents, we approve the petition, with the following comments for clarification.

1. The program involves only lawyers' deposits of clients' funds that are nominal in amount or expected to be held for only a short period of time. Professional ethics forbid lawyers from receiving the interest on such accounts. ABA Comm.Op. No. 348, 68 *A.B.A.J.* at 1503–04. Currently, such funds are usually pooled and held in noninterest-bearing accounts since the separate balances do not yield enough interest to cover the expense of computing, remitting, and reporting to the Internal Revenue Service the amounts attributable to each client. This program will allow noninterest-bearing lawyers' trust accounts to be switched to interest-bearing accounts whose pooled earnings will be paid to a charitable organization that will use them for the public benefit.

2. Where client funds are of sufficient amount or are held for a sufficient period that the lawyer can reasonably be expected to foresee that they will yield enough interest to be of significant benefit to the client after transaction costs, the lawyer will continue to be obligated to make the funds produce income for the benefit of the client. *Minnesota*, 332 N.W.2d at 157–58; *New Hampshire*, 453 A.2d at 1261; *cf.* 2 A. Scott, *The Law of Trusts* §§ 180.3, 181 (3d ed. 1967 and Supp.1981).

3. The program will be voluntary as defined here.[1] By written notice to the Foundation, any lawyer or law firm may affirmatively elect not to participate, but the program will apply to all lawyers and law firms not giving this notice.

4. The I.O.L.T.A. program is not conditioned upon the approval of clients. Indeed, if client approval were required, the Internal Revenue Ruling cited above would probably require that clients be taxed on the earnings on their respective balances in the pooled account, which would require computations, notices, and forms whose costs would render the whole program impractical.

5. It is unnecessary to notify individual clients whose funds are pooled in interest-bearing accounts in the I.O.L.T.A. program, but lawyers and law firms are encouraged to assure that their clients understand the nature and limitations of the I.O.L.T.A. program, especially the fact that it does not deprive clients of any interest income previously available to them from the investment of their funds. Lawyers should also help their clients and the public at large to understand that the I.O.L.T.A. program is expected to result in substantial public benefits. The following statements of the Florida and Minnesota Supreme Courts illustrate the policy considerations:

> We urge the Bar to encourage participation in this program, and in furtherance of that end to assist Florida financial institutions and Florida attorneys with as much information and aid as may be necessary to establish and maintain simple and inexpensive compliance procedures. The foremost objective of our 1978 program was to enhance the capability of the legal profession to deliver legal services to the poor. The broad delivery of legal services has long been a cherished commitment of this Court. At a time in this nation when existing governmental resources for this purpose are drastically threatened, our revisitation to this program provides a propitious occasion to reemphasize our commitment and to revalidate our methodology.

*Florida*, 402 So.2d at 396 (footnotes omitted).

> Since it is not possible as a practical matter to credit the interest to individual clients, we approve of the proposed concept of allowing such funds to be used for

---

1. We note that the Minnesota and California programs are mandatory for all lawyers in those states, Minnesota, *supra;* Cal.Bus. & Prof.Code § 6210–6228 (West 1983), but that other state programs are voluntary.

tax-exempt public purposes rather than to allow the interest to be lost.

*Minnesota,* 332 N.W.2d at 157.[2]

6. For the reasons adequately explained in the Florida, Minnesota, and New Hampshire opinions cited above, we see no federal or state constitutional impediment to the I.O.L.T.A. program as proposed in the petition and as elaborated in this opinion.

7. The program will become effective thirty days after the Foundation has received a favorable ruling from the Internal Revenue Service and has mailed implementation materials to the active members of the Utah State Bar.

8. *See generally* Rivlin, "I.O.L.T.A. Gains Momentum Nationwide" 69 *A.B.A.J.* 1036 (1983); Boone, "A Source of Revenue for the Improvement of Legal Services," 10 *St. Mary's L.J.,* 539, 11 *id.* 113 (1979); Gonser, Almond, & Ziegler, "Financing Public Services Activities with Interest-Bearing Attorney Trust Accounts," 15 *Idaho L.Rev.* 219 (1979).

An order will issue accordingly.

2. The Arkansas Supreme Court is one of the few courts that has denied a petition for an I.O.L.T.A. program, and the only court that has published an opinion giving the reasons for its denial. *In re Interest on Lawyers' Trust Accounts,* 279 Ark. 84, 648 S.W.2d 480 (1983). While the court affirmed its support for the basic concept of I.O.L.T.A., it stated that participation must be conditioned upon notice to and approval by the clients whose funds are so

STEWART, Justice: (Separate opinion)

I would approve the petition if clients were informed beforehand that interest earned from their trust funds is to be paid to the Utah Bar Foundation, and they are given a choice not to participate. In my view, the objectives of the Foundation are altogether laudable; but I do not believe, as appealing as it is, that that view is an adequate justification for dealing with other people's money in the manner proposed. Nor do I think it is a sufficient justification that if a client's consent is required the program would be jeopardized because of administrative complications caused by the Internal Revenue Service. *See In re Interest on Lawyer's Trust Accounts,* 279 Ark. 84, 648 S.W.2d 480 (1983). Without giving a client the right to choose, I am unable to agree to the petition as presently formulated.

used, even though this notice would make the program impractical under the present tax law. Otherwise, the court reasoned, the program could be the occasion of diminished public confidence in the legal profession. The court urged the Bar to work for an amendment to the tax law. We prefer to rely on the informational efforts of the Bar and the understanding of the public to counteract such an effect.