**Jean Ann CONE, as Personal Representative of the Estate of Evelyn M. Glaeser, deceased, and as representative of a class of all persons similarly situated, Plaintiff-Appellant,**

**v.**

**The STATE BAR OF FLORIDA, the Florida Bar Foundation, Inc., and Holland & Knight, Defendants-Appellees.**

**No. 85–3993.**

United States Court of Appeals, Eleventh Circuit.

June 19, 1987.

---

Herbert P. Schlanger, Atlanta, Ga., for plaintiff-appellant.

Thomas C. MacDonald, Jr., Craig B. Glidden, Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for The Florida Bar Foundation, Inc.

F. Wallace Pope, Jr., Clearwater, Fla., for Holland & Knight.

Michael Nachwalter, Brian F. Spector, William J. Blechman, Miami, Fla., and Paul F. Hill, Gen. Counsel, Tallahassee, Fla., for The Florida Bar.

Randall C. Berg, Jr., Peter M. Siegel, National IOLTA Clearinghouse, Florida Justice Institute, Inc., Miami, Fla., L. David Shear, National IOLTA Clearinghouse, Tampa, Fla., for amicus curiae Florida Legal Services, Inc., et al.

Arthur J. England, Jr., National IOLTA Clearinghouse, Miami, Fla., for amicus curiae National IOLTA Clearinghouse, et al.

Before HILL and JOHNSON, Circuit Judges, and ESCHBACH,* Senior Circuit Judge.

HILL, Circuit Judge:

This case challenges the constitutionality of the Florida Bar's Interest On Trust Accounts (IOTA) program, through which certain funds held in lawyers' trust accounts are placed in interest bearing accounts to produce income for legal aid programs and other public purposes. The parties filed cross-motions for summary judgment, supported by stipulated facts.

In February, 1969, Ms. Evelyn Glaeser retained the law firm of Holland & Knight to probate the estate of her deceased husband. Ms. Glaeser paid a cost deposit of $100 to Holland & Knight, which was placed in a noninterest-bearing trust ac-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

count. When the firm's representation of Ms. Glaeser concluded in 1970, $13.75 of the original cost deposit remained in the trust account. Holland & Knight inadvertently failed to refund this amount to Ms. Glaeser, and it remained in the firm's non-interest-bearing account until December 1, 1981.

During this period, the Supreme Court of Florida approved the IOTA program. The IOTA plan authorized, but did not require, lawyers and law firms to place nominal or short term funds into pooled interest-bearing accounts, the interest proceeds of which to be remitted by the financial institution directly to the Florida Bar Foundation. The Foundation would then allot the funds to legal aid organizations, law student scholarships, and other charitable purposes. Only deposits which could otherwise not earn interest net of expenses (because they were nominal in amount or were to be held for a short period of time) could be used to generate interest under the IOTA program.

On December 1, 1981, Holland & Knight transferred all of its nominal or short term trust account funds, including Ms. Glaeser's $13.75, to an interest bearing IOTA account, where Ms. Glaeser's deposit remained for almost three years. After discovering its error, Holland and Knight returned the principal amount to Ms. Glaeser by check on September 26, 1984. During the time that the money was in the interest-bearing account it generated $2.25 of interest, which was given, pursuant to the IOTA, to the Florida Bar Foundation.

Ms. Glaeser, claiming to represent all persons similarly situated, sued Holland & Knight, the Florida Bar, and the Florida Bar Foundation, to recoup this interest. She claimed that the appropriation of the interest earned on her money constituted an uncompensated taking of private property in violation of the Fifth Amendment (as applied to the states via the Fourteenth Amendment), and deprivation of her prop-

erty without due process, as well as a breach of fiduciary duty under state law. Her [1] argument was simple: any interest earned on her portion of the Holland & Knight IOTA account belonged to her.

The district court correctly perceived that the appellant's constitutional claims turned on one question, that being, whether the interest earned on nominal or short term funds held in an IOTA account was the property of the client for the purposes of the Fifth and Fourteenth Amendments. Appellant relied on the traditional property doctrine that interest follows principal. However, as the district court noted, "when Justice Johnson observed in *Himely v. Rose,* 9 U.S. (5 Cranch) 313, 319, 3 L.Ed. 111 (1809), that 'interest goes with the principle, as the fruit with the tree,' his illustration necessarily assumed the existence of a fruit-bearing tree." The district court found that in the absence of the IOTA program, Ms. Glaeser's money would not have borne any fruit, for her benefit or for anyone else's. Due to the regulations governing interest-bearing accounts, and the economic realities of attempting to produce income with such nominal or short-term deposits, the court determined that appellant's individual deposit could not have earned any interest net of expenses without the IOTA. Thus, it could not be said that she had a legitimate claim of entitlement to the interest which she claimed was taken from her without due process or just compensation. The court therefore dismissed her case, and we now affirm.[2]

▆ To demonstrate a constitutionally cognizable property interest appellant must show that she has a specific and legitimate "claim of entitlement" to the $2.25 generated on the $13.75 held for her in Holland & Knight's IOTA account. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A legitimate claim of entitlement can be based on positive rules of substantive law or mutually explicit understandings. *Perry v. Sinder-*

---

**1.** Ms. Glaeser passed away during the pendency of this suit and was replaced by Jean Ann Cone, the personal representative of her estate.

**2.** After dismissing the federal claims the district court declined to exercise pendent jurisdiction over the state claims. This decision is not challenged on appeal.

*man,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). These principles are designed to protect the claimant's reasonable, often investment-backed expectations, rather than inchoate unilateral expectations. *Penn Central Transportation Co. v. The City of New York,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Thus, appellant must identify substantive law or mutually explicit understandings which give her a legitimate claim of entitlement to a share of the interest earned on Holland & Knight's IOTA account. The district court determined that appellant could not satisfy this requirement because of three factors: (1) ethical requirements placed upon the legal profession in dealing with any kind of trust account; (2) the economics of running an interest-producing demand account; and (3) the restrictions that federal banking law places upon interest-producing demand accounts. An examination of the history behind the IOTA account program supports this conclusion.

■ Frequently, attorneys and law firms have the need to hold client funds, including advances for costs and expenses. The Florida Bar Code of Professional Responsibility, like the rules governing the conduct of attorneys in most states, requires that such funds be kept separate from the attorneys' own monies. Moreover, attorneys and law firms must often use available-on-demand accounts to facilitate the prompt delivery of such trust funds to the client upon request. Integration rule of Florida Bar, Rule 11.02(4); Dr. 9–102(B)(4), Fla.Bar Code of Prof.Resp. Historically, this meant that attorneys had to use noninterest-bearing accounts for such client deposits because federal law forbade the payment of interest on available-on-demand accounts in most states. *See* Banking Act of 1933, Ch. 89, § 11(b), Pub.L. No. 66, 48

Stat. 181 (1933). For these reasons, client trust deposits were normally pooled and maintained in a single noninterest-bearing demand account, separate from the attorney's own funds. *See* ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 348, 68 ABA Journal 1502 (1982).[3]

Before the initiation of the IOTA, the only beneficiaries of the old regime were the banks, who were treated to "free" use of trust account deposits. The IOTA plan was designed to put these dormant funds to good use. Because of the various restrictions described above, the original plan for Florida's IOTA program provided that client trust funds could be deposited into a pooled savings account. This would earn interest for the Florida Bar Foundation. Funds could be immediately transferred (at the client's request) to a noninterest-bearing checking account, to facilitate the quick return of such funds to the client. *In re Interest on Trust Accounts,* 356 So.2d 799, 804 (Fla.1978). While still somewhat cumbersome, this scheme would have allowed some interest to be earned on the funds. However, this version of the program was never implemented; instead, the IOTA program was able to capitalize on the arrival of interest-bearing checking accounts, which vastly enhanced the program's feasibility.

Interest-bearing checking accounts were authorized by the Consumer Checking Account Equity Act, 12 U.S.C. § 1832(a)(1) (1982). The Act allows for interest to be paid on certain types of available-on-demand accounts, specifically, Negotiable Order of Withdrawal accounts, commonly known as "NOW" accounts. However, the statute restricts the use of NOW accounts; only funds owned by individuals, certain charitable non-profit organizations, or public entities are allowed to receive interest on their checking accounts.[4] *See* 12 U.S.C.

---

**3.** Where funds are held for a specific client, and the expected holding period makes it obvious that the money could earn interest that would exceed the lawyer's administrative costs and the bank charges, the lawyer should consult the client about depositing the funds in such a way as to generate interest. *See* ABA Formal Op. 348, 688 ABA Journal 1503 (1982). An attorney is normally required to place trust funds in an

interest bearing account if the client so requests. *Id.*

**4.** The Florida IOTA program was able to utilize NOW accounts as early as 1981 via a special ruling from the Federal Reserve Board. 68 A.B. A.J. 1504 at n. 7.

§ 1832(a)(2) (1982); 12 C.F.R. §§ 217.157, 329.103, 526.1(1) (1986) (discussing eligible depositors for NOW accounts).

The IOTA program, as implemented, circumvents these restrictions. Making an eligible nonprofit charitable organization (the Foundation) the sole recipient of the interest produced by the trust funds enables the IOTA to use NOW accounts without violating 12 C.F.R. § 217.157. Making one entity the recipient of the fund also enables interest to aggregate such that it exceeds bank charges, because the bank does not need to sub-account the fund. The money produced by the IOTA may thus be used to provide legal services for the poor, and other charitable pursuits. At last count, 41 states and the District of Columbia had adopted IOTA programs.[5]

■ In this case, the district court found that appellant's nominal deposit could not have been placed in a separate NOW account because $13.75 fell short of the minimum balance requirements for such an account. Even assuming that the money could be deposited in an interest bearing account, the administrative costs incurred by Holland & Knight, along with the bank service charges, would have devoured the estimated $.06 per month in gross interest produced by appellant's $13.75 deposit. The district court concluded that as an individual account maintained by Holland & Knight for the benefit of Ms. Glaeser, appellant could not have realized any interest net of expenses on her $13.75 deposit.

Moreover, the federal banking laws discussed above mean that appellant's nominal deposit could not be placed in a pooled NOW account maintained in Holland & Knight's name, because partnerships cannot maintain NOW accounts under federal banking regulations. 12 C.F.R. § 217.157. Nor could appellant's nominal deposit be placed in a pooled NOW account maintained by Holland & Knight as trustee for its clients, because the account would be partially composed of deposits of corporate clients in violation of federal banking laws. *Id.* Even assuming that Holland & Knight could maintain separate trust accounts for their corporate clients and their private, individual clients, the total cost of subaccounting would exceed the interest earned on the aggregate fund.[6] The district court concluded, and we agree, that:

> The end result of these economic and practical impediments to individual investment of IOTA funds is to negate any reasonable unilateral expectation, much less a mutually explicit understanding, that a client such as Mr. Glaeser should receive interest generated by the IOTA program.

The sole authority cited by appellant in support of her contention that she has a substantive right to IOTA proceeds is *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). In *Webb's,* the Supreme Court struck down a Florida law

---

**5.** *See* National IOLTA Clearinghouse, 3 IOLTA Update (Spring 1986). The Supreme Courts of at least 30 of these states have agreed with the Florida Supreme Court that no property is taken via the establishment of an IOTA program because such programs create income which would never, under any set of circumstances, accrue to the benefit of the client. *See e.g., Matter of Interest on Trust Accounts,* 402 So.2d 389, 395 (Fla.1981); *Petition of Minnesota State Bar Association,* 332 N.W.2d 151 (Minn.1982); *Petition of New Hampshire Bar Association,* 122 N.H. 971, 453 A.2d 1258 (1982); *Matter of Interest on Lawyers Trust Accounts,* 672 P.2d 406 (Utah 1983); *In the Matter of Interest On Lawyers' Trust Accounts,* 283 Ark. 252, 675 S.W.2d 355 (1984), *reversing,* 279 Ark. 84, 648 S.W.2d 480 (1983); *Petition of Massachusetts Bar Assoc.,* 395 Mass. 1, 478 N.E.2d 715 (1985); *Carroll v. State Bar of California,* 166 Cal.App.3d 1193, 213 Cal.Rptr. 305 (4 Dist.1984), *cert. denied sub*

*nom. Chapman v. State Bar of California,* —— U.S. ——, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985).

**6.** The affidavit of Holland & Knight's comptroller, John F. Dwiggins, attached to Holland & Knight's motion for summary judgment, indicated that the cost of subaccounting a pooled fund would have far exceeded the interest earned by appellant. This was supported by the affidavit of Herbert C.M. Hoover, Senior Vice President of the NCNB National Bank of Florida, who indicated that the charge for subaccounting was $2.00 per month for each subaccount in a pooled account, plus $.25 per transaction. This fee would be 30 times larger than the gross interest per month produced on appellant's nominal deposit of $13.75. Appellant did not offer any contradictory evidence on this point.

which declared interest accrued on interpleader funds deposited with the registry of a county court to be the property of the court clerk. The Supreme Court found that the Florida statute allowed the county to, "exact two tolls," because under the statute the county was allowed to charge a processing fee, and, additionally, keep all the interest accruing from money deposited with the court. Florida Stat. § 676.106(4) (1977).

The Supreme Court did base its decision in *Webb's* upon the "usual and general rule [that] any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." 449 U.S. at 162, 101 S.Ct. at 451. The court noted that a recharacterization of this interest as public money was not a sufficient justification for the taking. While the court "express[ed] no view as to the constitutionality of a statute that prescrib[ed] a county's retention of interest earned, where the interest would be the only return to the county for the service it renders" in setting up the interpleader fund, it found that the double toll imposed by the Florida statute was an unconstitutional taking.

Despite the superficial similarity, the *Webb's* decision is distinguishable from this case in that the interest earned on the interpleader funds deposited pursuant to the Florida statute did give rise to a legitimate claim of entitlement. The funds were sufficient in amount, and held for a

sufficient period of time, to generate $90,000 in interest over a year and a half. *Id.*, 449 U.S. at 158, 101 S.Ct. at 449. The district court in this case correctly concluded that, "the crucial distinction is not the amount of interest earned, but that the circumstances led to a legitimate expectation of interest exclusive of administrative costs and expenses." The district court pointed out that the Supreme Court in *Webb's* found that the challenged statute had "the practical effect of appropriating for the county the value of the use of the fund for the period in which it [was] held in the registry." *Id.*, 449 U.S. at 164, 101 S.Ct. at 452. Here, the district court concluded as a matter of law that the use of Ms. Glaeser's money had no net value, therefore there could be no property interest for the state to appropriate. We agree.[7]

In affirming the district court, we emphasize that we are not establishing a de minimis standard for Fifth Amendment takings, or due process violations. We do not wish to imply that the state may constitutionally appropriate property so long as the property is very small property. Here, there was no taking of any property of the plaintiff.[8] Standing alone, her deposit in the IOTA account could not earn anything. By combining all such deposits, interest income has been created which was not within the legitimate expectations of the owner of any one of the principal amounts.[9]

---

7. Where an attorney wrongfully withholds money from a client, by law that client may or may not be entitled to interest on the wrongfully withheld funds. In such a situation the interest is in the nature of a penalty. Our affirmance of the district court is not intended to cover interest awarded in such a situation.

8. Appellant also argues that the existence of her property interest is proven by the fact that the IRS made clear it would treat IOTA income as income to the attorney's client if the client had a say in whether or how to invest the money. To avoid this result, the IOTA program was amended in 1981 to eliminate client control over the investment of the funds. We agree with the Florida Supreme Court that the IRS' opinion was based on traditional notions of assignment of income under revocable trust funds; its decision did not account for the unique circumstances of this case. *See In re Matter of Interest*

*on Trust Accounts*, 402 So.2d 389 (Fla.1981). Moreover, the "assignment of income" doctrine is not designed to determine who is the legal owner of specific property; rather, the purpose of the doctrine is to assure that income is taxed to he who earns it. *See McLucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930).

9. Appellant also argues that, as in *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), the fact that the government makes use of private property in a way that the owner could not use it does not mean that there is no taking. This argument misses the point. In *Causby*, the court found a "taking" in the government's use of air space above the claimant's land because this destroyed his ability to use his land as a chicken farm. It was undisputed that the chicken farmer in *Causby* had a *property interest*. The question was whether or not a "taking" occurred. The farmer was eco-

For the foregoing reasons the judgment of the district court is

AFFIRMED.

nomically damaged to the extent that he could no longer use his property as a chicken farm.

Here, appellant has no property interest in the interest.