**REVISED**

UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

_____

No. 95-50160

_____


WASHINGTON LEGAL FOUNDATION, WILLIAM R. SUMMERS,
MICHAEL J. MAZZONE,

                              Plaintiffs-Appellants,

            versus

TEXAS EQUAL ACCESS TO JUSTICE FOUNDATION,
W. FRANK NEWTON, CHAIRMAN, TEXAS EQUAL ACCESS
TO JUSTICE FOUNDATION, THOMAS R. PHILLIPS, CHIEF JUSTICE,
RAUL GONZALEZ, JUSTICE, JACK HIGHTOWER, JUSTICE,
NATHAN L. HECHT, JUSTICE, LLOYD A. DOGGETT, JUSTICE,
BOB GAMMAGE, JUSTICE, CRAIG T. ENOCH, JUSTICE, JOHN CORNYN
JUSTICE, ROSE SPECTOR, JUSTICE, SUPREME COURT DFTS,

                              Defendants-Appellees.


_____

Appeal from the United States Court of Appeals
for the Western District of Texas
_____

February 14, 1997

On Petitions for Rehearing and Suggestions for Rehearing En Banc
(Opinion September 12, 1996, 5th Cir., 94 F.3d 996)


Before WISDOM, GARWOOD and JONES, Circuit Judges.

PER CURIAM:

     The Petitions for Rehearing are DENIED and the court having
been polled at the request of one of the members of the court and
a majority of the judges who are in regular active service not
having voted in favor, (FRAP and Local Rule 35) the Suggestions for
Rehearing En Banc are also DENIED.

1

POLITZ, Chief Judge, KING, WIENER, BENAVIDES, STEWART and PARKER, Circuit Judges, dissent from the refusal of the court to grant rehearing en banc.

FORTUNATO P. BENAVIDES, joined by POLITZ, Chief Judge, STEWART and PARKER, Circuit Judges, dissenting from failure to grant rehearing en banc:

In the subject case, a panel of this court held that "clients ... have a cognizable property interest in the interest proceeds that are earned on their deposit in IOLTA accounts." 94 F.3d 996, 1005 (5th Cir. 1996). In reaching this conclusion, the panel relied upon the traditional rule applied in Texas that "interest follows principal," which recognizes that interest earned on a deposit belongs to the owner of the principal. *Id.* at 1000. The panel also relied upon the Supreme Court's opinion in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, which in turn relied upon the same state law rule to hold that "earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property." *Id.* at 1002 (quoting 449 U.S. 155, 164, 101 S. Ct. 446, 66 L.Ed.2d 358 (1980)).

This decision is an important one because it contradicts every other court in the country that has addressed this issue, including two of our sister circuits and a large number of state appellate courts.[1] Moreover, while purporting to resolve only a threshold

---

[1] *See Washington Legal Fdn. v. Mass. Bar Fdn.*, 993 F.2d 962 (1st Cir. 1993); *Cone v. State Bar of Fla.*, 819 F.2d 1002 (11th Cir.), *cert. denied*, 484 U.S. 917, 108 S. Ct. 268, 98 L.Ed.2d 225 (1987); *Carroll v. State Bar of Cal.*, 166 Cal. App. 3d 1193, 213 Cal. Rptr. 305 (Cal. Ct. App. 1984), *cert. denied*, 474 U.S. 848, 106 S. Ct. 142, 88 L.Ed.2d 118 (1985); *Petition by Mass. Bar Ass'n*, 478 N.E.2d 715 (Mass. 1985); *In re Interest on Lawyers' Trust*

2

issue in this case, the opinion is bound to create difficulties and confusion for the district court on remand. Finally, this case poses an unwarranted threat to a primary source of funding for public interest legal organizations in this circuit at a time when these organizations are already struggling for their lives financially. For the foregoing reasons, I believe that this case is worthy of our en banc consideration and respectfully dissent from the contrary conclusion of my colleagues.

I.

Texas is one of fifty states that operates an Interest on Lawyers Trust Account Program ("IOLTA"). The IOLTA concept is possible because there are situations in which the costs of maintaining funds held by lawyers for their clients exceed the interest that a client can earn from a financial institution. When the amount of a client's funds to be held is nominal or when a client's funds will be held for a brief period of time, the deposit of a client's funds acts as an interest-free loan to the bank. IOLTA is an attempt to transfer this benefit from banks to legal providers for the indigent. The Texas IOLTA program has been a resounding success, raising approximately $10 million per year for legal services organizations in the state.

The plaintiffs brought this action because of their objections

---

*Accounts*, 648 S.W.2d 480 (Ark. 1983); *In re Adoption of Amendments to C.P.R. D.R. 9-102 IOLTA*, 102 Wash. 2d 1101 (Wash. 1984); *In re Lawyers' Trust Accounts*, 672 P.2d 406 (Utah 1983); *In re New Hampshire Bar Ass'n*, 453 A.2d 1258 (N.H. 1982); *In re Minnesota State Bar Ass'n*, 332 N.W.2d 151 (Minn. 1982); *In re Interest on Trust Accounts*, 402 So.2d 389 (Fla. 1981).

3

to the activities of the recipients of IOLTA funds.[2] *Washington Legal Fdn.*, 94 F.3d at 999. The plaintiffs contend that the IOLTA program constitutes an unconstitutional taking of property, in violation of the Fifth Amendment to the United States Constitution, and that the program violates the First Amendment because it forces them to support speech they find offensive. The plaintiffs seek an injunction against further operation of the Texas IOLTA program and compensation for any interest earned on their deposits into IOLTA accounts.

The district court concluded that the plaintiffs' constitutional challenges failed at the threshold because the plaintiffs could not establish a property interest in the earnings from funds deposited in IOLTA accounts. The district court, therefore, granted summary judgment in favor of the defendants. On appeal, a panel of this court reversed the decision of the district court and remanded the case for further proceedings.

## II.

"The pertinent words of the Fifth Amendment of the Constitution of the United States are the familiar ones: 'nor shall private property be taken for public use, without just compensation.'" *Webb's Fabulous Pharmacies*, 449 U.S. at 160. In order to prevail on a takings clause claim, a plaintiff must

---

[2] IOLTA rules provide that "[t]he Foundation shall make grants to organizations ... hav[ing] as a primary purpose the delivery of legal services to low income persons...." TEXAS RULES OF COURT—STATE, Rules Governing the Operation of the Texas Equal Access to Justice Foundation ("IOLTA Rule"), Rule 10 (West 1996). Eligible recipient organizations "shall use such funds to provide legal services to individual indigent persons." IOLTA Rule 11.

establish an interest in private property. "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972). "But a mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Webb's Fabulous Pharmacies*, 449 U.S. at 161.

At the outset, it is important to draw a distinction never addressed by the panel between "accrued interest" and "interest proceeds." The panel correctly noted that accrued interest is always created by funds deposited in a bank. *See Washington Legal Fdn.*, 94 F.3d at 1003. The IOLTA concept is simply an attempt to transfer this accrued interest from banks to legal aid organizations. Interest proceeds, however, are the amount of accrued interest that remains after deducting the costs of administering a deposited fund. It is undisputed that a client's funds may be deposited in an IOLTA account only if they are incapable of producing interest proceeds because of the nominal amount or the short duration of the deposit.[3]

---

[3] IOLTA Rule 6 provides, in part:

The funds of a particular client are nominal in amount or held for a short period of time, and thus eligible for use in the Program, if such funds, considered without regard to funds of other clients which may be held by the attorney, ... could not reasonably be expected to earn interest for the client or if the interest which might be earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining the account, service charges, accounting costs and tax

A careful reading of *Webb's* makes clear that the existence of interest proceeds to which the depositors were entitled was a prerequisite to the Court's decision. In reaching its conclusion that creditors had a cognizable property right to the interest from an interpleader fund deposited with the court clerk for their benefit, the Court held that "[t]he *earnings* of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property." *Webb's Fabulous Pharmacies*, 449 U.S. at 164 (emphasis added). A clear implication of this holding is that if a fund generates no earnings to which its owner is entitled, there is no cognizable property interest.

Moreover, when the Court discussed whether the creditors had a property interest in the principal of the interpleader fund, the Court recognized that "[i]t is true, of course, that none of the creditor claimants had any right to the deposited fund until their claims were recognized and distribution was ordered." *Id.* at 161 (citation omitted). In concluding that the creditors did in fact have a property interest, the Court was careful to note that "[e]ventually, and inevitably, that fund, less proper charges authorized by the court, would be distributed among the creditors

reporting costs which would be incurred in attempting to obtain interest on such funds for the client.

It is worth noting that whether attorneys correctly apply the requirements of Rule 6 is irrelevant to the constitutional issue resolved by the panel's opinion. If attorneys violate IOLTA's rules by depositing ineligible funds, it seems that any action a client might have would be against her attorney. To the extent the state may be implicated, this is certainly not because IOLTA's rules result in the taking of a client's property, but rather because IOLTA's rules were not followed.

as their claims were recognized by the court." *Id.* This language makes clear that the Court will not recognize a constitutionally cognizable interest in the principal of a deposited fund unless and until it is clear that the fund will be distributed as proceeds to its beneficiary. Therefore, when the Court later concluded that earnings from such a fund are property "just as the fund itself is property," *id.* at 164, the Court strongly suggested that interest proceeds are a necessary prerequisite to a constitutionally cognizable property interest in the earnings from a deposited fund.

Finally, the Court was careful to limit its holding to cases in which a separate statute authorizes the state to subtract its administrative costs. *See id.* at 164-65. In those cases it is clear that interest proceeds exist because the costs of administering the fund have already been subtracted from the accrued interest generated by the fund. Therefore, it is equally clear that the fund's owner has been deprived of a property interest. In cases where "double tolling" of this sort does not occur, it cannot be so easily determined whether the fund's owner has been deprived of interest proceeds to which she is entitled. It is clear to me that the Court limited its holding because a bright-line rule establishing a property interest in this latter situation would be inappropriate.

Similarly, it follows that the state law rule that "interest follows principal" controls only when interest is earned on the principal or, in other words, when interest proceeds are

7

available.[4]  Consider the fate of the plaintiffs' accrued interest in the absence of IOLTA.  Because the costs of administering the deposited funds would exceed any interest earned by a client, the bank would keep the accrued interest.  Are the banks violating the traditional state law rule?  Are the banks somehow converting or stealing the clients' property?  The answer of course is no—because the clients had no interest in property to take.

## III.

The panel attempted to avoid this reality by claiming that a bank assigns interest to a depositor in a two-part process.  *See Washington Legal Fdn.*, 94 F.3d at 1003.  According to the panel, a bank attributes interest to an account prior to deducting any of its fees.  *Id.*  From this, the court concluded that "a property interest attaches the moment that the interest accrues...."  *Id.*

Even if the panel presents an accurate picture of banking practices, however, those practices are beside the point.  For purposes of a takings clause challenge, a constitutionally cognizable interest in property does not exist in "earnings" from a deposited fund unless and until those earnings can be distributed as proceeds to the fund's beneficiary.  Because IOLTA-eligible funds would never produce interest proceeds, earnings from such funds cannot be distributed to the funds' owners.  For this reason, the panel's conclusion that a property interest was created after

---

[4]  The *Webb's* Court's limitation of its holding would have been unnecessary if the "interest follows principal" rule results in the creation of a property interest irrespective of the costs associated with administering accrued interest.

8

the first step in the bank's process of assigning interest is simply wrong.

The fact that interest proceeds are created by the Texas IOLTA program does not weaken this conclusion. Rather, the simple recognition that without IOLTA there would be no interest proceeds compels it. The plaintiffs in this case are not harmed in any way by the existence of IOLTA and would not be benefitted in any tangible way by its elimination. I find it both ironic and fatal to the plaintiffs' claim that in order to have a property interest in this case, they must rely on the existence of the program they seek to eliminate.

In addition to being consistent with a fair interpretation of the legal authority relied upon by the panel, rejection of the plaintiffs' asserted property interest in this case is consistent with the protections underlying the Takings Clause. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. While beneficial use of property is certainly not essential to the existence of a property interest worthy of the protections of this provision, such an interest does require that the property at issue have some actual or potential *compensable value* that could accrue to the benefit of its owner. In addition, a primary purpose of the Takings Clause is to protect the investment-backed expectations of property owners that their property will not be taken for public

9

use without just compensation.[5]

Unless the owner of a fund deposited in an IOLTA account could reasonably expect to receive interest proceeds (of any amount) from her earnings, the client's "property" does not have any compensable value. Moreover, the fact that the client does not receive any interest proceeds from her deposited funds does not interfere with her investment-backed expectations because she could not have reasonably expected to receive any net interest when the deposit was made. In my view, these unusual circumstances prevent the client from asserting a constitutionally cognizable interest in property.

This understanding of the Takings Clause is buttressed by the available remedy for plaintiffs whose property has been unconstitutionally taken. Such plaintiffs are entitled to just compensation, i.e., the fair market value of their property. Because the fair market value of the earnings of IOLTA-eligible funds is $0, the client would be entitled to nothing. In sum, applying Fifth Amendment protections to an asserted property interest that does not have any compensable value is not consistent with the purposes that underlie the Takings Clause—to compensate a property owner for the value of her property that was taken for

---

[5] In *Lucas v. South Carolina Coastal Council*, Justice Scalia noted that the Court has "acknowledged time and again, '[t]he economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations' are keenly relevant to takings analysis generally." 505 U.S. 1003, 1019 n.8, 112 S. Ct. 2886, 120 L.Ed.2d 798 (1992) (quoting *Pennsylvania Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S. Ct. 607, 54 L.Ed.2d 477 (1978)).

public use.

IV.

In addition to creating a circuit split, misinterpreting the legal authority upon which it relied, and applying a takings clause analysis to governmental action that does not implicate relevant fifth amendment values, the panel's analysis can only create confusion for the district court on remand. The Supreme Court's cases dealing with the Takings Clause fit roughly into the two categories of regulatory takings and per se takings. *See* JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 11.12, at 462-66 (5th ed. 1995). Regulatory takings involve governmental regulations that impinge upon a property owner's economic interests. In regulatory takings cases, the Court has adopted a balancing test whereby it weighs the economic impact of the regulation on the property owner suffering the loss against the public benefits of the regulation. *See, e.g., Pennsylvania Cent. Transp. Co.*, 438 U.S. at 124. Viewed as a regulatory takings case, IOLTA clearly passes muster because the clients have suffered no economic loss and the public has greatly benefitted. *See Massachusetts Bar Fdn.*, 993 F.2d at 976 (noting that Massachusetts's IOLTA program has no economic impact on clients and does not interfere with their investment-backed expectations).

Per se takings involve what might be considered a "literal" taking of property. The Court adopts a per se approach and finds a compensable taking of property without a case-by-case inquiry. *See* NOWAK & ROTUNDA, *supra*, § 11.12, at 463-64. The Court has

11

adopted a per se approach if a regulation deprives an owner of the entire value of her property. *Id.* (citing *Lucas*, 505 U.S. at 1003). The Court has also adopted a per se approach if the governmental action results in physical occupation of property or a permanent change in rights of ownership. *Id.* at 464 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164, 73 L.Ed.2d 868 (1982)). Viewed as a per se takings case whereby the clients have a property interest that is literally appropriated by the state, IOLTA is almost certainly unconstitutional.

*Webb's* was clearly a per se takings case. The Court's entire opinion is dedicated to determining that the creditors had a property right in the principal and interest proceeds of the subject interpleader fund. *See* 449 U.S. at 156-64. Because this property was appropriated by the state for its own purposes, a literal taking of the property occurred. This latter conclusion required no separate analysis by the Court and accordingly was given none. *See id.* at 164-65.

The panel's opinion in the instant case gave no explicit indication whether the court viewed the case as a regulatory or per se takings case. If the panel viewed this case as one involving a regulatory taking, it should have made this clear in its remand order and should not have relied on *Webb's*. On the other hand, if the panel regarded the case as one involving a per se taking, it should not have bifurcated the inquiries regarding whether the clients had a property right and whether a taking of that property

12

occurred. An affirmative answer to the second question would necessarily follow from an affirmative answer to the first.

The panel's opinion implicitly indicated that it left open the question of whether the case should be viewed as a regulatory takings case or as a per se takings case. The panel noted that "to prevail on their taking claim, the plaintiffs must demonstrate that the taking was against the will of the property owner." *Washington Legal Fdn.*, 94 F.3d at 1004. In addition, the court cited *Yee v. City of Escondido*, 503 U.S. 519, 539, 112 S. Ct. 1522, 118 L.Ed.2d 153 (1992), which held that "because [a city's] rent control ordinance [did] not compel a landowner to suffer the physical occupation of his property, it [did] not effect a per se taking...." While the applicability of this decision to the context of deposited funds is not clear, it does leave open the possibility that a per se taking did not occur in the subject case because clients voluntarily deposit their money with an attorney (who, in turn, deposits eligible funds into an IOLTA account). The fact remains, however, that *Webb's*, the principal case relied upon by the panel, was a per se takings case. Because I abide by my concerns regarding the panel's conclusion that the plaintiffs asserted a constitutionally cognizable property interest in the accrued interest from IOLTA deposits, I would not burden the district court with this confusion.

V.

The issue addressed by the panel in the subject case raises very difficult and interesting conceptual issues regarding the

13

proper definition of property for fifth amendment purposes.  Three judges in this circuit have concluded that the plaintiffs have asserted a constitutionally cognizable property interest in the earnings from IOLTA-eligible funds, despite the inability of such funds to produce interest proceeds.  I disagree with that conclusion, as has every other court to have addressed the issue.  Moreover, the panel's decision on this "threshold issue" will have important implications for the disposition of this case on remand and, ultimately, for the constitutionality of the IOLTA programs in Louisiana, Mississippi, and Texas.  For these reasons, I believe that the intellectual efforts of our court's entire membership would have benefitted the decision making process in this clearly important case.  I regret my colleagues' decision to deny rehearing en banc and respectfully dissent.