538 So.2d 448 (1989)
Matter of INTEREST ON TRUST ACCOUNTS: A PETITION TO AMEND the RULES REGULATING THE FLORIDA BAR.
No. 72671.
Supreme Court of Florida.
January 26, 1989.
Rehearing Denied March 15, 1989.
*449 William O.E. Henry, President, Orlando, Roderick N. Petrey, Immediate Past President, and Randall C. Berg, Jr. and Peter M. Siegel, Miami, for The Florida Bar Foundation, petitioner.
Russell E. Carlisle of Carlisle & Lecates, Fort Lauderdale, amicus curiae for The Nat. Ass'n of IOLTA Programs, Inc.
Steven M. Goldstein and Henry George White, Tallahassee, amicus curiae for Florida Legal Services, Inc., Tallahassee.
Rutledge R. Liles, President, Jacksonville, Stephen N. Zack, President-elect, Miami, A. Hamilton Cooke, Sp. Committee to Review Comprehensive IOTA, Jacksonville, and John F. Harkness, Jr., Executive Director and Paul F. Hill, Gen. Counsel, Tallahassee, for The Florida Bar.
Joseph W. Little, Gainesville, Henry P. Trawick, Jr., Sarasota, Richard V. Neill of Neill, Griffin, Jeffries and Lloyd, Fort Pierce, Brian C. Sanders, Fort Walton Beach, Michael H. Davidson of Watson & Clark, Fort Lauderdale, Harvey M. Alper of Massey, Alper and Walden, Altamonte Springs, Hugo L. Black, Jr. of Kelly, Black, Black, Byrne, Craig & Beasley, Miami, Ben L. Bryan, Jr. of Fee, Bryan & Koblegard, P.A., Ft. Pierce, Jodi Siegel, Albert J. Hadeed and Alice K. Nelson of Southern Legal Counsel, Inc., Gainesville, Brent R. Taylor, The Ass'n for Retarded Citizens/Florida, Tallahassee, J. Michael Hartenstine of Williams, Parker, Harrison, Dietz and Getzen, Sarasota, Terrence William Ackert, Winter Park, and Thomas W. McAliley of Beckham, McAliley & Schulz, P.A., Miami, Responding.
EHRLICH, Chief Justice.
Pursuant to rule 1-12.1 of the Rules Regulating The Florida Bar, fifty or more active members of The Florida Bar, on behalf of the Florida Bar Foundation, petition the Court to amend rule 5-1.1(d) of the Rules Regulating The Florida Bar to "require that all trust funds earn interest, either for the benefit of the client, or, where impracticable, the IOTA program."
In 1978, this Court adopted the nation's first Interest on Trust Accounts Program (IOTA). In re Interest on Trust Accounts, 356 So.2d 799 (Fla. 1978). After several minor amendments, Matter of Interest on Trust Accounts, 372 So.2d 67 (Fla. 1979), and delays due to uncertainty as to the appropriate federal income tax treatment *450 of the interest payable to the Florida Bar Foundation, Florida's IOTA program, permitting voluntary participation by lawyers and law firms, became operational in September 1981. In re Interest on Trust Accounts, 402 So.2d 389 (Fla. 1981).[1] Adoption of this innovative program reflected this Court's long-standing commitment to the broad delivery of legal services. Id. at 396. Under the program, the interest generated on trust accounts is used to fund programs which are designed to improve the administration of justice or to expand the delivery of legal services to the poor. 372 So.2d at 68.
In 1985, the Special Commission on Access to the Legal System, which was appointed by the Governor, the Chief Justice of this Court, and the President of The Florida Bar, reported the "overwhelming statistics" of the unmet need for legal services within this state. Recommendations of the Special Commission on Access to the Legal System 8 (May 16, 1985).[2] Responses from legal services organizations indicate that resources for legal services for the poor in Florida are less available now than they were in 1981, when the IOTA program was implemented. The decline in federal funding to the Legal Services Corporation in conjunction with Florida's growing number of poor has greatly increased the need for funds generated under the IOTA program. Despite the diligent efforts of the Florida Bar Foundation and The Florida Bar to promote participation in the IOTA program, according to the Foundation, only twenty percent of Florida attorneys who have trust accounts participate in the program. The Foundation projects a decline in the revenue earned under the program from $3,605,079 for fiscal year 1986-87 to $3,150,977 for fiscal year 1987-88. Although in 1981, when the IOTA program was implemented, we rejected the Foundation's proposal to make the program mandatory and stated that "[o]ur decision today, subject only to any technical difficulties ... is our last endeavor in this field," 402 So.2d at 393, we are not precluded from considering other options which have since proven more effective in meeting our original goal of promoting the availability of legal services.
The petitioners urge us to convert Florida's IOTA program from voluntary to comprehensive, in accordance with the recommendation of the American Bar Association House of Delegates that all states with voluntary programs convert to a comprehensive program. ABA House of Delegates Resolution 101 (Feb., 1988). Under a comprehensive program, all trust funds held by an attorney are required to be at interest. Funds which are nominal in amount or to be held for a short term are placed in a pooled account with the interest earned going to the IOTA program. All other trust funds are placed in interest-bearing accounts for the benefit of clients. According to Resolution 101, comprehensive plans are considered preferable to other plans because they: 1) generate substantially more revenue;[3] 2) eliminate costly and time-consuming recruiting campaigns; 3) avoid potential ethical problems created by a lawyer's use of interest-free trust accounts as the quid pro quo for receiving economic benefits from bank;[4] and 4) have proven successful in States which have adopted such a program. ABA Resolution 101, supra, at 2.
The Florida Bar also recognizes a need to modify Florida's IOTA program. However, although its Special Committee to Study Comprehensive IOTA recommended *451 that the Bar support a mandatory program, the Bar opposes the petition and recommends that an "opt-out" program be adopted. The opt-out program is a hybrid program under which lawyers have a period of time to opt-out of participation in the program. Under most opt-out plans there is an opt-out period allotted each year.
The Foundation points out that an opt-out program is best suited to jurisdictions which are either geographically small or have a small bar membership, making recruitment easier. In its report to the Board of Governors, The Florida Bar's Special Committee rejected an opt-out program for Florida, concluding that "[r]ecruiting affirmative sign-up in a large state like Florida is time consuming and expensive and likely to meet only limited success." Report and Recommendations to Board of Governors Concerning Comprehensive IOTA 8 (1988). We agree with the Foundation that because, as a practical matter, an opt-out program would likely offer only limited improvement in participation in the IOTA program, this program would not generate adequate funds to ensure the availability of legal services to Florida's poor.
In its report and recommendations to the Board of Governors, the Special Committee recommended that the Board support a mandatory IOTA program, as distinguished from a comprehensive program. Id. at 9-12. A mandatory program differs from a comprehensive program in that there is no requirement that trust funds be placed in a interest-bearing account for the client whenever practicable. Under a mandatory program only nominal and short-term funds must be placed in an interest-bearing account, with the interest earned going to the IOTA program. The Special Committee found this program preferable because it "would not include the possible administrative or accounting costs or headaches feared by some lawyers relating to [the comprehensive program's] requirement of individual client or pooled interest bearing trust accounts for non-IOTA funds." Id. at 7.
We find the Special Committee's Report and Recommendations persuasive and agree that adoption of a mandatory program is the most effective and least burdensome manner in which to generate significant funds for the programs of the Florida Bar Foundation. The Foundation has no objection to the adoption of a mandatory program, since the funds generated would be equal to those generated under the comprehensive program favored by the Foundation.
We have received numerous comments from interested Bar members, the National Association of IOLTA (Interest on Lawyers Trust Accounts) Programs as amicus curiae, and other organizations. The National Association of IOLTA Programs and the legal services organizations which have responded strongly favor the conversion of Florida's program from voluntary to comprehensive. The majority of the objections to the Foundation's proposal are based on the mandatory nature of a comprehensive program. Opponents claim that:
1. use of the interest earned on clients' funds, under a mandatory program, amounts to a taking;
2. adoption of a comprehensive program would exceed the constitutional power of this Court to regulate the practice of law and would violate the doctrine of separation of powers by creating an unauthorized tax;
3. client consent should be required;
4. the cost of the proposed program will be imposed on bank customers;
5. a comprehensive program intrudes on the attorney-client relationship;
6. a comprehensive program will result in clients' funds being used to further causes which may be against their interest or with which they disagree;
7. attorneys should not be compelled to participate;
8. a comprehensive program is unnecessary because there is no evidence that banks provide benefits to attorneys in exchange for non-interest-bearing trust accounts; and
*452 9. a comprehensive program will result in increased administrative and record-keeping burdens.
Several of these concerns have previously been addressed by this Court. In In re Interest on Trust Accounts, 402 So.2d at 395, we rejected a fifth amendment "taking" challenge to the voluntary program, reasoning that "no client is compelled to part with `property' by reason of a state directive, since the program creates income where there had been none before, and the income thus created would never benefit the client under any set of circumstances."[5] We do not believe that the mandatory, as opposed to voluntary, nature of an IOTA program changes this analysis. See Carroll v. State Bar, 166 Cal. App.3d 1193, 213 Cal. Rptr. 305 (Ct.App.) (holding that California's mandatory IOTA program does not involve a taking of property without just compensation, as prohibited by the fifth amendment to the United States Constitution), cert. denied sub nom. Chapman v. State Bar, 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985).
A decade ago, in In re Interest on Trust Accounts, 356 So.2d at 799, this Court concluded that the creation of the IOTA program was within the Court's constitutional authority to regulate the practice of law. The requirement that trust funds which would otherwise create no income be pooled in an interest bearing account for the benefit of the IOTA program does not amount to an unauthorized tax on client funds. No contribution of clients' funds is mandated under the program; and there is no pecuniary burden placed on either the client or the lawyer.
We have twice addressed the client consent issue. Client consent was required under the program, as originally adopted in 1978. Id. at 807. However, one of the final amendments to the program was the removal of all client control over whether funds would be placed in an IOTA account. This requirement was removed to make the program acceptable to the IRS by eliminating the potential for an "assignment of income" situation. 402 So.2d at 390-91.
There is no evidence that bank customers will in any way be burdened by an IOTA program in which participation is mandatory. We also perceive no adverse effect which mandatory participation in the program will have on the attorney-client relationship.
The claim that a mandatory program will result in clients' funds being used to further causes with which they may disagree does not warrant rejection of a such a program. No funds of the client are directly used by the program. The program merely uses otherwise idle funds to generate interest which is used to further recognized public interests. Likewise, while this Court has refused to "mandate acts of charity" such as mandatory pro bono service, In re Emergency Delivery of Legal Services to the Poor, 432 So.2d 39 (Fla. 1983),[6] the argument that lawyers should not be compelled to participate in charitable endeavors is an insufficient basis for rejection of a mandatory IOTA program. As noted by the Special Commission on Access to the Legal System:
Unlike many mandatory demands on a lawyer's time and resources, IOTA intrudes not at all on any legitimate interest of the lawyer. If public policy dictates that idle funds be put to work in the public interest, why should any individual attorney have the right and power to frustrate that decision?
*453 Recommendations of the Special Commission on Access to the Legal System, supra, at 8.
Concerns of increased administrative and record-keeping burdens are unfounded under a mandatory program. When the IOTA program was originally adopted this Court "approv[ed] and continu[ed] existing practical and ethical procedures concerning either the investments of clients' funds or investment advice,"[7] in an attempt to make the program "simple and inexpensive." 402 So.2d at 395. A mandatory program requiring that only nominal and short-term funds be placed in an interest-bearing account would be no more burdensome than the current voluntary program. As under the current program, only one set of documents furnished by the Florida Bar Foundation would need to be signed.[8] All subsequent reporting and remittances would be transmitted to the Foundation by the banking institution.
Under the program which we adopt today, trust funds which are nominal in amount or to be held for a short period of time must be placed in a interest-bearing trust account, with the interest (net of any service charges or fees) payable to the Florida Bar Foundation, Inc. This requirement will only apply to trust funds held in Florida. As under the voluntary program, an attorney will have the option of depositing funds which are neither nominal in amount nor to be held for a short period of time in interest-bearing accounts for the benefit of the client. However, there will be no rule requiring that this be done and, provided that such is not required by traditional attorney-client relationships, no attorney shall be subject to disciplinary sanctions for failure to invest or to advise of the possibility of investing non-IOTA funds. See 402 So.2d at 394; 356 So.2d at 802 n. 20.
As under the current program, the determination of whether a client's funds are nominal in amount or to be held for a short period of time will rest in the sound judgment of the attorney or law firm. No attorney shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of judgment in this regard. See 402 So.2d at 394.
We return this matter to the Florida Bar Foundation for proposed amendments to Chapter 5 of the Rules Regulating The Florida Bar and to any other provisions of the rules necessary to implement a mandatory program. We also ask that the Board of Directors of the Foundation meet with the Board of Governors of The Florida Bar to develop a proposed plan for the selection of the Foundation's Board of Directors which will ensure a fair and adequate representation of the Bar membership in the decisionmaking process of that body. Proposed amendments to the Florida Bar Foundation Charter should be submitted in conjunction with the proposed amendments to the rules. The proposed amendments shall be submitted to this Court for publication, in accordance with rule 1-12.1 of the Rules Regulating The Florida Bar, by April, 1, 1989. Upon publication, no comments challenging the propriety of the mandatory nature of the program shall be entertained.
It is so ordered.
OVERTON, SHAW, BARKETT and GRIMES, JJ., concur.
McDONALD, J., concurs with an opinion.
KOGAN, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring.
Because of the simplicity and expediency of operation, I join in the opinion in approving a mandatory, as opposed to a comprehensive plan. At the same time, I announce my view that all attorneys have an ethical responsibility to their clients to *454 place all trust funds in an interest-bearing trust account, and when practicable to do so, deliver the earned interest to the client; when impracticable, the funds should go to IOTA. In no event should the attorney receive any of the interest-generated funds, nor should the funds sit idly by.
KOGAN, Justice, concurring in part, dissenting in part.
I completely agree with the majority that the time has arrived for the lawyers of this state to participate in a mandatory interest on trust accounts (IOTA) program. The need to supply adequate legal representation to those who cannot afford it has undeniably outpaced our ability and resources for supplying such representation. This program does not deprive clients of any money and results only in a very minimal amount of paperwork for the attorney. Therefore, I concur with that portion of the majority opinion which requires participation in the mandatory IOTA program for short-term trust account funds.
However, I must disagree with the majority on one point. I do not believe that a client should be required to contribute funds to the IOTA program which could in turn use those funds to further causes either financially or philosophically adverse to the client. As part of this mandatory IOTA program, I believe we should provide an opt-out alternative to the client. In other words, the client should be allowed to prevent by an affirmative act the use of his funds for the IOTA program. Such a procedure would maintain the high degree of participation desired by The Florida Bar, yet those clients who do not want to pay the legal fees of those persons whose financial and philosophical pursuits are adverse to their interests need not be required to contribute thereto. For these reasons, I concur in part and dissent in part from the majority opinion.
NOTES
[1] IOTA programs have been established in 48 states and the District of Columbia. Response and Brief of the National Association of IOLTA Programs, Inc. at 1.
[2] One of the recommendations of the special commission was the conversion of Florida's IOTA program from voluntary to mandatory. Recommendations of the Special Commission on Access to the Legal System 8-9 (May 16, 1985).
[3] It has been estimated that over 12 million dollars a year will be generated if participation in Florida's program is made mandatory. Recommendations of the Special Commission on Access to the Legal System, supra note 2, at 8.
[4] This practice is generally referred to as the "compensating balances."
[5] Recently, in Cone v. State Bar, 819 F.2d 1002 (11th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987), the Eleventh Circuit also rejected a claim that the interest earned on nominal or short term funds held in an IOTA account was the property of the client for the purposes of the fifth and fourteenth amendments. The court reasoned that there was no taking because, under the circumstances, the client had no legitimate "claim of entitlement" to the interest earned on her funds exclusive of administrative costs and expenses. Id. at 1007.
[6] Under The Florida Bar's proposal, Bar members were to be required to provide 25 hours of free legal service to the poor or, in the alternative, donate $500 to the Florida Bar Foundation or participate in the interest on trust account program. In re Emergency Delivery of Legal Services to the Poor, 432 So.2d 39, 40 (Fla. 1983).
[7] The burdens inherent in both the investment of non-IOTA funds and the apportionment of their earnings was recognized by this Court in In re Interest on Trust Accounts, 356 So.2d 799, 801 n. 18 (Fla. 1978).
[8] A form letter to the financial institution and a form letter to the Foundation must be signed.