PER CURIAM.
Pursuant to rule 1 — 12.1(f) of the Rules Regulating The Florida Bar, fifty or more active members of The Florida Bar, on behalf of the Florida Bar Foundation (Foundation), petition the Court to amend rule 5-1.1(e) of the Rules Regulating The Florida Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
Rule 5-l.l(e) deals with the Interest on Trust Accounts (IOTA) Program and requires that all nominal or short-term funds *182 which are placed in trust with a member of The Florida Bar practicing within the state of Florida be deposited into an interest-bearing trust account for the benefit of the Foundation. Under the IOTA program, the interest generated on trust accounts is used to fund programs which are designed to improve the administration of justice or to expand the delivery of legal services to the poor. In re Interest on Trust Accounts, 538 So.2d 448, 450 (Fla.1989).
The petition was authorized by the Board of Directors of the Foundation as the administrator of the IOTA Program. The proposed amendments were also authorized by the Board of Governors of The Florida Bar at its November 1, 1996, meeting. Notice of the filing of this petition and a copy of the proposed amendments were published in the November 15,1996, issue of The Florida Bar News. Comments or objections to the proposed amendments were due by January 13, 1997. The Bar filed a response asking the Court to approve the petition. Bar member Elsie C. Turner filed a response in opposition to the amendments and also filed a brief in opposition on her own behalf and on behalf of several financial management firms.
The proposed amendment to rule 5 — 1.1(e) would implement a voluntary IOTA sweep account[1] program in order to increase annual IOTA revenue. The Foundation would recruit attorneys and law firms with high average balance IOTA accounts (in excess of $30,000) in eligible financial institutions to establish sweep accounts utilizing daily bank repurchase agreements as the higher yield investment.[2] Only those Florida financial institutions offering repurchase agreements that are fully collateralized by direct obligations of the United States government or its agencies would be eligible to participate in the program. According to the Foundation, such a voluntary sweep program has the potential of increasing annual IOTA revenue by $7.5 million.
Turner argues that the proposed amendment “unreasonably restricts the investment vehicle” into which the IOTA funds may be swept. Turner requests that the Court suspend any action on the proposed amendment until the Foundation investigates alternative investment vehicles such as government-portfolio money market funds.
After reviewing the petition and other materials filed in support of and opposition to the proposed amendment and hearing oral argument from the parties, we conclude that the rule should be amended to permit voluntary IOTA sweep accounts at eligible financial institutions through the use of daily bank repurchase agreements.[3] However, as suggested by the Foundation at oral argument, we limit the use of such repurchase agreement instruments for the IOTA sweep accounts to those financial institutions that carry the two highest levels of capitalization ratings from the Federal Deposit Insurance Corporation.
Accordingly, we approve the petition and amend rule 5-l.l(e) as reflected in the Appendix to this opinion. Underscoring indicates new language; strike-through type indicates deletions. The amendments to this rule shall become effective upon the filing of this opinion. Because the rule amendment relating to the capitalization ratings of eligible financial institutions is being adopted by the Court without prior notice to interested parties, we hereby direct that all interested parties may submit comments regarding this amendment within thirty days from the date *183 of this opinion. Consideration of comments, however, will not alter the effective date of the amendments.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
APPENDIX
RULE 5-1.1 TRUST ACCOUNTS
[No change to (a) through (d).]
(e) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used in rule 5-l.l(e) herein, the term:
(A) “nominal or short term” describes funds of a client or third person that, pursuant to rule 5-l.l(e)(7) subdivision (7), below, the lawyer has determined cannot practicably be placed at interest for the benefit of the client or third person;
(B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IOTA account” means a trust account described in rule 5-l.-l(e) subdivision (2), below.
(D) “Daily Financial Institution Repurchase Agreement” means an overnight investment of IOTA Funds described in subdivision (4), below, in a financial institution eligible to enter into a Daily Repurchase Agreement described in subdivision (3), below.
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing from an office or other business location within the state of Florida shall be deposited into one or more interest-bearing trust checking accounts in an eligible financial institution for the benefit of the Foundation, except as provided in rule 4-1.15 with respect to funds maintained other than in a bank account, or as provided in rule 5-1.2(a). Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of rule 5-l.l(d) this rule.
(3) Eligible Financial Institutions. An IOTA account shall be established with any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws. The funds in each IOTA account covered by this rule shall be subject to withdrawal upon request and without delay. A daily financial institution repurchase agreement, described in subdivision (1)(D), above, may be established only with an eligible financial institution which is deemed to be “well capitalized” or “adequately capitalized” as defined in applicable federal statutes and regulations.
(4) Interest Rates. The rate of interest on any-I-Q-TA account funds covered by this rule shall not be less than the rate paid by the financial institution to on funds of non-IOTA account depositors. Higher rates offered by the financial institution to customers whose deposits exceed certain time or quantity mín-imums may be obtained by a lawyer or law firm for IOTA accounts on some or all of the deposited funds through use of eligible financial institution daily repurchase agreements in which the underlying security consists solely of direct obligations of the United States Government or agency thereof so long as there is no impairment of the right to immediately withdraw or transfer principal.
(5) Remittance Instructions. Lawyers or law firms shall direct the financial institution:
(A) to remit interest on the balance in-the IOTA account of the deposited funds, in accordance with the financial institution’s standard practice for non-IOTA account depositors, less reasonable service charges or fees, if any, in connection with the deposited funds IOTA account, at least quarterly, to the Foundation;
(B) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the *184 lawyer’s or law firm’s IOTA trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest earned during the remittance period, the amount of any service charges or fees assessed during the remittance period, and the net amount of interest remitted for the period; and
(C)to transmit to the depositing lawyer or law firm, for each remittance, a report showing the amount paid to the Foundation, the rate of interest applied, and the period for which the report is made.
(6) Notice to Foundation. Lawyers or law firms shall advise the Foundation at Post Office Box 1553, Orlando, Florida 32802-9919, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the financial institution; the name of the lawyer or law firm on the IOTA account; the financial institution name; the financial institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established an IOTA the account. Lawyers or law firms shall provide to the Foundation advance notice of their intent to establish a daily financial institution repurchase agreement. Such advance notice shall include: the IOTA account number; the name of the lawyer or law firm on the IOTA account; the financial institution name; and the financial institution address.
(7) Determination of Nominal or Short-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements and/or service charges or fees imposed by the financial institution.
The determination of whether a Ghent’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(8) Small IOTA Accounts Fund Amounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable financial institution service charges or fees.
(9) Confidentiality. The Foundation shah protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of rule 5-l.l(e) this rule. [No change to (f) — (g).]

. A sweep account is an existing cash management product used to generate higher yields on checking accounts. At the end of each business day after all deposits, checks, and charges have cleared against an account, the financial institution electronically transfers the excess funds out of the account into a higher yield investment. At the start of the next business day, the financial institution electronically returns the excess funds to the account and posts the interest earned.

. We emphasize that participation in the IOTA sweep account program will be strictly voluntary. Only those attorneys who agree to establish sweep accounts will be involved.

. In approving the use of repurchase agreements for voluntary IOTA sweep accounts, we pass no judgment on the suitability of other investment vehicles such as the government-portfolio money market funds advocated by Turner. We would expect the Foundation to continue to investigate alternative investment opportunities that would accomplish the dual goals of increasing IOTA revenues and safeguarding the trust funds.