# Supreme Court of Florida

No. SC2025-1730

**IN RE: AMENDMENTS TO RULES REGULATING THE FLORIDA BAR – RULE 5-1.1.**

June 4, 2026

PER CURIAM.

The Florida Bar petitions this Court to amend Rule Regulating The Florida Bar 5-1.1 (Trust Accounts).[1] The proposed amendments change the minimum interest rate in rule 5-1.1(g)(5) (Eligible Institution Participation in IOTA)[2] that banks and other financial institutions participating in the Interest on Trust Account (IOTA) program must pay on deposited funds. With this change, the interest rate provision in the rule would match recently enacted

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.; *see also* R. Regulating Fla. Bar 1-12.1.

2. This Court first adopted a voluntary IOTA program in 1978, and then made participation mandatory for Bar members in 1989. *See In re Int. on Tr. Accts.*, 538 So. 2d 448 (Fla. 1989). Since 1990, the IOTA program rule has included a provision governing interest rates. *See* R. Regulating Fla. Bar 5-1.1(d)(4) (1990).

legislation on the same subject, *see* Fla. HB 893 (2026). The Florida Bar's Board of Governors approved the proposed amendments in concept by a voice vote on September 19, 2025, and the Board of Governors' Executive Committee later unanimously approved the text of the proposed amendments.[3]

Consistent with rule 1-12.1(g), the Bar published formal notice of its intent to file the proposed amendments on its website and in *The Florida Bar News*. The notice directed interested parties to file comments directly with the Court. No comments were received.

The Court, having considered the petition, hereby amends rule 5-1.1 as proposed by the Bar. Under the amended rule, banks and financial institutions participating in the IOTA program must "pay, net of all fees and charges assessed by the eligible financial institution, the Wall Street Journal Prime Rate in effect on the first business day of each month less 300 basis points (3.00%) with a floor of 0.25% and a ceiling of 1.50%."

Rule Regulating The Florida Bar 5-1.1 is amended as set forth

---

3. To the extent the Bar did not follow the procedures in rule 1-12.1 in proposing these amendments, we waive the requirements of that rule. *See* R. Regulating Fla. Bar 1-12.1(i).

in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The amendments shall become effective June 30, 2026, at 12:01 a.m.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
TANENBAUM, J., dissents with an opinion.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

TANENBAUM, J., dissenting.

This rule—both the proposed new text and the text it replaces—far exceeds the limited scope of this court's regulatory and rule-making authority under the Florida Constitution. The only regulatory authority this court has concerns the "admission" and "discipline" of lawyers. Art. V, § 15, Fla. Const. The only administrative rule-making authority the court has pertains to the "practice and procedure in" and "the administrative supervision of all courts." Art. V, § 2(a), Fla. Const. Yet, through the rule being amended, the court continues its attempt to regulate the interest the banks pay on money deposited with them as part of its interest-skimming Interest on Trust Accounts ("IOTA") program. While the

- 3 -

rule characterizes financial institutions' participation in the IOTA program as "voluntary," it still mandates those participating institutions pay a rate meeting court-set parameters. One still must ask, though: "Or else what?"

The court of course is free to require lawyers under its disciplinary control to avoid mingling interest earned on their clients' funds deposited in trust. It could even set what minimum interest rate lawyers must pursue when shopping for financial institutions for their trust accounts, to the extent such a rate were available. But the court's construing its lawyer-discipline authority as also reaching financial institutions who agree to accept lawyers' trust accounts, frankly, is laughable.

Most everyone knows that the Florida Constitution vests the State's sovereign legislative power in a senate and house of representatives. *See* Art. III, § 1, Fla. Const. That means the *Legislature* is the primary lawgiver—the maker of substantive policy—for the State. Indeed, there is an entire title in the Florida Statutes, enacted by the Legislature, devoted to regulating financial institutions. *See* Title XXXVIII, Fla. Stat. This court has no similar authority regarding financial institutions, even when they choose to

participate in some project the court has set up under its lawyer-discipline authority. The court should simply stand down and leave the regulation of financial institutions to the Legislature.

Original Proceeding – Florida Rules Regulating The Florida Bar

Rosalyn Sia Baker-Barnes, President, Michael Fox Orr, President-elect, Joshua E. Doyle, Executive Director, Elizabeth Clark Tarbert, Division Director, Lawyer Regulation, and Kelly N. Smith, Senior Attorney, The Florida Bar, Tallahassee, Florida,

     for Petitioner

# APPENDIX

## RULE 5-1.1.    TRUST ACCOUNTS

**(a) – (f)**    [No Change]

**(g)    Interest on Trust Accounts (IOTA) Program.**

(1) – (4)    [No Change]

(5) *Eligible Institution Participation in IOTA.*  Participation in the IOTA program is voluntary for banks, credit unions, savings and loan associations, and investment companies.  Institutions that choose to offer and maintain IOTA accounts must ~~meet the following requirements:~~ pay, net of all fees and charges assessed by the eligible financial institution, the Wall Street Journal Prime Rate in effect on the first business day of each month less 300 basis points (3.00%) with a floor of 0.25% and a ceiling of 1.50%.

~~(A)    Interest Rates and Dividends.  Eligible institutions must maintain IOTA accounts that pay the highest interest rate or dividend generally available from the institution to its non-IOTA business or consumer account customers, or its non-maturing deposit account customers when IOTA accounts meet or exceed the same minimum balance qualifications.~~

~~(B)    Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that these factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.  When the Wall Street Journal Prime Rate ("indexed rate") is between 325 and 499 basis points (3.25% and 4.99%), the minimum interest rate paid net of all fees and service charges ("yield") must be no less than 300 basis points (3.00%)~~

- 6 -

~~below the indexed rate in effect on the first business day of each month.  When the indexed rate is 500 basis points (5.00%) or above, the yield must be no less than 40% of the indexed rate in effect on the first business day of each month.~~

(~~C~~6)  *Eligible Institution Remittance and Reporting Instructions.*  Eligible institutions must:

(~~i~~A)   calculate and remit interest or dividends on the balance of the deposited funds, ~~in accordance with the institution's standard practice for non-IOTA account customers, less reasonable service charges or fees, if any,~~ subject to the determination of required interest rates above in connection with the deposited funds, at least quarterly, to the foundation;

(~~ii~~B)   transmit with each remittance to the foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer's or law firm's IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and

(~~iii~~C) transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the foundation, the rate of interest applied, and the period for which the statement is made.

(~~6~~7)  *Small Fund Amounts.*  The foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.

(~~7~~8)  *Confidentiality and Disclosure.*  The foundation must protect the confidentiality of information regarding a lawyer's or law

firm's trust account obtained by virtue of this rule.  However, the foundation must, on an official written inquiry of The Florida Bar made in the course of an investigation conducted under these Rules Regulating The Florida Bar, disclose requested relevant information about the location and account numbers of lawyer or law firm trust accounts.

(89)  *Distribution of IOTA Funds by the Foundation.*  No later than 6 months after the fiscal year, the foundation must distribute to 1 or more qualified grantee organizations all IOTA funds collected that fiscal year except for direct expenses required to administer the IOTA funds, funds required to fund the Loan Repayment Assistance Program, and an additional reserve amount if requested by the foundation and approved by the court.  Prior to distribution, the foundation must maintain IOTA funds separate from other foundation funds.  The foundation may not condition distribution of IOTA funds to a qualified grantee organization on payment to the foundation for any purpose, including training or technology.  The foundation must select qualified grantee organizations based on objective standards it develops.  When adopted, the foundation must provide those standards to both The Florida Bar and the court and also prominently publish those standards on the foundation's website.  The standards must require that IOTA funds be used to facilitate or directly provide qualified legal services by qualified legal services providers and, to ensure fair distribution of IOTA funds across Florida, must consider relevant data, including:

(A) – (B)    [No Change]

(910)  *Use of IOTA Funds by Qualified Grantee Organizations.*  A qualified grantee organization must expend at least 85% of the IOTA funds received to facilitate qualified legal service providers providing or facilitating the provision of qualified legal services or, if such expenditures in any given year constitute less than 85% of the IOTA funds received, provide to the foundation a written justification.  A qualified grantee organization must expend no more than 15% of the IOTA funds received for general administrative expenses not directly supporting the provision of

qualified legal services and establishing reserves or, if such expenditures in any given year constitute more than 15% of the IOTA funds received, provide to the foundation a written justification. Except as provided below, general administrative expenses include rent, training, and technology. Expenditures to facilitate qualified legal service providers providing or facilitating the provision of qualified legal services are limited to:

(A) – (D)     [No Change]

(~~10~~11)  *Reporting by the Foundation.* In addition to providing the court with a copy of the annual audit of IOTA funds, the foundation must annually certify to the court its compliance with this rule's requirements on the use of IOTA funds. This certification must include, but not be limited to:

(A) – (I)     [No Change]

(~~11~~12)  *Reporting by Qualified Grantee Organizations.* Qualified grantee organizations must annually certify to the foundation their compliance with this rule's requirements on the use of IOTA funds. This certification must include, but not be limited to:

(A) – (H)     [No Change]

(~~12~~13)  *Required Review.* The court will cause a review of the amendments to rule 5-1.1(g) finally adopted by the court on June 18, 2021, to be conducted to advise the court regarding their overall efficacy 2 years after their effective date. The scope of this review may also include any other matters related to the IOTA program.

**(h) – (k)**   [No Change]

**Comment**
[No Change]

- 9 -

**Foundation Provision of Training and Technology; Grantees' Funds from Non-IOTA Sources**
[No Change]